Clifton v. Hopkins and First National Bank of Temple
















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-075-CV

     MARGARET CAMERON BOLTON CLIFTON,
                                                                         Appellant
     v.

     EDWARD CAMERON NIND HOPKINS
     AND FIRST NATIONAL BANK OF TEMPLE,
                                                                         Appellees
 

From the 74th District Court
McLennan County, Texas
Trial Court # 97-3473-3
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Margaret Clifton is the primary beneficiary of three trusts, and her son, Edward Cameron
Nind Hopkins, is the contingent remainder beneficiary. The First National Bank of Temple
(“Bank”) was the trustee of these three trusts. There is also a fourth trust involved in this appeal,
a “Qualified Personal Residence Trust” which concerns Clifton’s residence (“Residence Trust”);
Hopkins is the beneficiary of that trust.
      Clifton filed a lawsuit in October 1997 against Hopkins and the Bank to have her rights
regarding the trusts declared and to have other matters related to the trusts resolved. In June
1999, she amended her petition for the fourth time and added a claim for common-law fraud
against Hopkins, alleging that he made false promises to her to induce her to set up the Residence
Trust and make other gifts to him. Also in the amended petition, she added a claim against the
Bank for breach of fiduciary duty regarding two of the other three trusts. For these two trusts,
the Bank began in 1996 to allocate 27.5% of the proceeds from oil and gas lease bonuses and
royalties to the principal of the trusts, which amount Clifton asserted should have been distributed
to her as income.
      Hopkins and the Bank filed motions for summary judgment as to the fraud and breach-of-fiduciary-duty claims, which the court granted.


 Clifton appeals from the judgment on those
claims.
      Finding the summary judgment proper, we will affirm.
Traditional Summary Judgment Standard of Review
      “Rule 166a provides a method of summarily terminating a case when it clearly appears that
only a question of law is involved and that there is no genuine fact issue.” Rhone-Poulenc, Inc.
v. Steel, 997 S.W.2d 217, 222 (Tex. 1999). The movant has the burden to prove by summary-judgment evidence that “there is no genuine issue as to any material fact and the moving party is
entitled to judgment as a matter of law on the issues expressly set out in the motion.” Id.; Nixon
v. Mr. Property Management Co., 690 S.W.2d 546, 548 (Tex. 1985); Tex. R. Civ. P. 166a(c). 
If the movant for summary judgment is a defendant, then the movant must negate at least one of
the elements of the non-movant's cause of action, or, alternatively, the movant must conclusively
establish each element of an affirmative defense. Randall's Food Mkts., Inc. v. Johnson, 891
S.W.2d 640, 644 (Tex. 1995). The non-movant need not respond to the motion for summary
judgment unless the movant meets its burden of proof. Rhone-Poulenc, Inc., 997 S.W.2d at 222-23. But if the movant meets its burden of proof, the non-movant must present summary-judgment
evidence to raise a fact issue. Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995). 
We review a summary judgment de novo. Rucker v. Bank One Texas, N.A., 36 S.W.3d 649, 653
(Tex. App.—Waco 2000, pet. denied). In conducting our review, we must accept as true all
evidence that is favorable to the non-movant, and we must resolve all doubts and indulge every
reasonable inference regarding the existence of a genuine issue of fact in favor of the non-movant. 
Rhone-Poulenc, Inc., 997 S.W.2d at 223; Nixon, 690 S.W.2d at 548-49.
The Fraud Claim Against Hopkins
      The elements of fraud are:
      (1)  a material representation;
 
      (2)  which was false;
 
      (3)  which was either known to be false when made or made recklessly without knowledge
of its truth;
 
      (4)  which was intended to be acted or relied upon;
 
      (5)  which was acted or relied upon; and 
 
      (6)  which caused injury or damage. 

E.g. Formosa Plastics v. Presidio Engineers, 960 S.W.2d 41, 47 (Tex. 1998); Spoljaric v.
Percival Tours, Inc., 708 S.W.2d 432, 434-35 (Tex. 1986). If the alleged misrepresentation
involves a promise to perform an act in the future, the plaintiff must prove that, when the promise
was made, the defendant intended not to perform. Formosa Plastics, 960 S.W.2d at 48; Spoljaric,
708 S.W.2d at 434.
      Clifton claimed that, to induce her (a) into establishing the Residence Trust


 in 1991, by which
ownership of her personal residence would pass to Hopkins in 2001 when the trust terminated, and
(b) to make other gifts to Hopkins, such as mineral interests and a monthly allowance, he falsely
promised “to accommodate [Clifton’s] desire and need to remain in her residence upon termination
of the [Residence Trust], and . . . to accommodate [Clifton’s] need for a sufficient level of income
from the [other trusts] so as to maintain her customary lifestyle.” Specifically, Clifton asserted
that, even though the terms of the Residence Trust provide her no legal right to remain in the
residence, Hopkins had promised that she could reside there if she paid a fair market rental value. 
She alleged he had repudiated the promised inducement and did not intend to keep the promise
when the trust terminated. As for future income, Clifton asserted that Hopkins promised Clifton
that it would be sufficient to maintain her lifestyle, but he broke that promise by opposing her
attempt to amend the trusts to override or delete the provisions that allowed the Bank to withhold
the reserves for depletion. She said the withholding was lowering her income level and thus her
standard of living.
      Hopkins filed three motions for summary judgment. In the third motion, a traditional one
from which this appeal derives, he argued there is no evidence of several of the elements of fraud,
because: (a) the Residence Trust had not yet terminated, and there was no evidence of what he
might do in the future when it did terminate (no false material representation - elements 1 and 2);
(b) there was no evidence that, when he allegedly made the promise about the residence in 1991,
he intended to not fulfill the promise (no intent not to perform - element 3); (c) the evidence
conclusively establishes that the alleged misrepresentation about future income was made in a letter
long after the creation of the Residence Trust, and thus Clifton could not have relied on the
misrepresentation at the time she created the Residence Trust (no reliance - element 5); (d) the
evidence conclusively establishes that Hopkins never expressly promised Clifton a level of future
income (no false material representation - elements 1 and 2); and (e) the evidence conclusively
establishes that Clifton’s level of income had not declined (no injury or damage - element 6).
      The summary judgment evidence relied on by the parties concerning the fraud claim consists
of excerpts from a deposition and an affidavit, both given by Clifton. Hopkins relies on the
deposition, and Clifton relies on the affidavit.
      In a summary-judgment affidavit dated September 3, 1999, made after the fraud claims were
added, Clifton stated that Hopkins “assured me he was willing to accommodate my desire and
need to remain in my residence upon termination of the [Residence Trust]. [He] specifically told
me that he understood and would accommodate my need for a sufficient level of income so as to
maintain my customary lifestyle.” She said that, only in reliance on these “statements and
assurances,” did she set up the Residence Trust. But later, Hopkins “proceeded to tell me . . .
he would not give me any assurance that I could remain in the house . . . , [and] he proceeded to
tell me . . . that he would not agree to the elimination, or even the reduction, of the 27.5% reserve
for depletion . . . , unless, perhaps, I enter[ed] into a contractual will leaving everything to him.”
      But in a deposition on October 11, 1999, taken in part to explore the statements in the
affidavit, Clifton testified: (1) Hopkins never told her that she could not continue to live in the
residence and pay rent; (2) she was speculating that, when the trust terminated, Hopkins would
not let her continue to live in the residence; (3) the “sole basis” for her speculation was a letter
Hopkins wrote her in September 1997, a month before she filed the lawsuit, and from which “she
knew that he would eventually do everything he could to take everything away from me. But it’s
not written anything about the house in this letter.”; (4) she never discussed with Hopkins a
necessity for her to have a sufficient level of income; and (5) although the 1997 letter is also the
sole basis of her allegation that Hopkins promised to accommodate her need for future income,
there was nothing in the letter about that.
      The testimony from Clifton’s deposition shows the following:
      •    There was no evidence that Hopkins intended, in 1991 or later, to not allow Clifton to
live in the residence after the Residence Trust terminated.
 
      •    The evidence conclusively established that Hopkins did not make Clifton a promise about
her future income.
 
      •    The evidence conclusively established that, if Hopkins made a misrepresentation about
future income, it was made in a letter long after the creation of the Residence Trust, and
so Clifton could not have relied on it when she established the trust.

      Thus, based on her deposition testimony, Clifton’s fraud claim fails on the elements of intent
not to perform, material misrepresentation, and reliance.
      Clifton, however, argues that her affidavit conflicts with her deposition testimony and creates
a fact issue about these elements. A party’s testimony that is in conflict with other of its testimony
may create a fact issue. Thompson v. City of Corsicana Housing Auth., 57 S.W.3d 547, 557 (Tex.
App.—Waco 2001, no pet.). But we do not agree with Clifton. Her affidavit states in general
terms that Hopkins told Clifton she could remain in the residence and that he would
“accommodate” her need for future income, but that he later told her she could not remain in the
residence and he would oppose amending the trusts to eliminate the reserve provisions. However,
the affidavit provides no details about how and when these promises were allegedly made or
broken. Her deposition testimony, on the other hand, refers specifically to how and when the
promises were allegedly made and broken. Thus, the deposition testimony does not contradict the
statements in the affidavit but, rather, supplements and explains them. And the explanation shows
that her sworn statements, taken together, do not support the fraud claim. Instead, they negate
several elements of her fraud claim, the failure of any one being adequate to justify the summary
judgment. Randall's Food Mkts., 891 S.W.2d at 644.
      We find no genuine issue of material fact. Hopkins has successfully negated elements of
Clifton’s fraud claim. Tex. R. Civ. P. 166a(c); Rhone-Poulenc, 997 S.W.2d at 222. The
summary judgment was properly granted as to Hopkins, and we overrule the issue.
The Breach of Fiduciary Duty Claim Against the Bank
      Provisions in two of the three trusts (other than the Residence Trust) give the Trustee “full
power to determine the manner in which . . . receipts are to credited as between principal and
income, and also to determine what shall constitute income or net income, and what shall
constitute corpus or principal, and [the Trustee] may withhold from income any reserves for
depreciation or depletion as the Trustee may deem fair and reasonable. In determining such
matters the Trustee may give consideration to the provisions of . . . the Texas Trust Act . . . but
shall not be bound by such provisions.” The Trust Act allows a trustee to allocate certain mineral-interest proceeds to principal in an amount equal to the lesser of 27.5% of gross proceeds or 50%
of net revenues (gross proceeds minus expenses and carrying charges). Tex. Prop. Code Ann.
§ 113.107(d) (Vernon 1995). In 1996, two years after being appointed successor trustee, the Bank
began to allocate 27.5% of the proceeds from oil and gas lease bonuses and royalties to the
principal of the trusts. Such an allocation protects the interests of the contingent remainder
beneficiary. Id. § 113.101 (Vernon 1995) (duty of trustee to remaindermen). Trustees prior to
the Bank had not implemented the allocation or reserve provisions of the trusts.
      Clifton alleged in her fourth amended petition, without any specifics, that the Bank breached
its fiduciary duty to her by making the allocations to principal which should have been distributed
to her as income. In later summary judgment pleadings and evidence, she alleged that, even
though trust provisions allowed for the allocations, doing so injured her by decreasing her income
flow, which the Bank ignored even though it knew that previous trustees had not made the
allocations. Thus she says the Bank violated its fiduciary duty to guard her welfare. She also
alleged that the Bank, in instituting the allocations, was only protecting itself from a possible
lawsuit by Hopkins for failing to properly look after the trust principal, and therefore the Bank
was looking out for its own interests, not hers.
      The Bank filed a traditional summary judgment motion


 asserting that, as a matter of law, the
breach-of-fiduciary-duty claim fails because:
      •    The two trusts contain nearly identical exculpatory clauses that the “Trustee shall not be
liable for any mistake or error of judgment or negligence, but each Trustee shall be liable
only for his [or its] own personal acts of dishonesty.” [Emphasis added.] Thus, because
Clifton does not allege any personal acts of dishonesty, any other acts which might be a
breach of fiduciary duty are excluded by the express terms of the trusts.
 
      •    The trusts specifically authorize the Trustee to allocate receipts between principal and
income and to follow the Texas Trust Code, which by its express terms provides a 27.5%
allocation of these mineral proceeds to principal. Thus, because the Bank followed the
terms of the trusts and the Trust Code, it cannot be in breach of a fiduciary duty.
 
      •    When the Bank was appointed as successor Trustee in 1994, the agreed judgment which
accomplished that stated, in part: The Bank “. . . is hereby relieved of any duty which
it would otherwise have to inquire into and satisfy itself as to the acts of” any previous
trustees. Thus, the Bank is not bound by the decisions of prior trustees to not allocate
the proceeds, so that cannot be a breach of fiduciary duty.

      In response to Clifton’s summary judgment affidavits, the Bank filed objections that the
affidavits were conclusory and therefore constituted no evidence. The record does not indicate
that the trial court ever ruled on the objections.
      We agree with the Bank’s argument about the exculpatory clauses. The evidence conclusively
establishes that the Bank is not liable to Clifton, if these clauses are valid.
      The Texas Trust Code sets forth both a general duty for trustees and a standard for trust
management:
      •    “A trustee shall administer the trust according to its terms and this subtitle. In the
absence of any contrary terms in the trust instrument or contrary provisions of this
subtitle, in administering the trust the trustee shall perform all of the duties imposed on
trustees by the common law.” Id. § 113.051 (Vernon 1995).
 
      •    “Unless the terms of the trust instrument provide otherwise, a trustee shall exercise the
judgment and care under the circumstances then prevailing that persons of ordinary
prudence, discretion, and intelligence exercise in the management of their own affairs .
. . .” Id. § 113.056(a) (Vernon 1995).

      And the Code specifically allows, subject to exceptions not relevant here, a settlor to relieve
the trustee of statutory and common law duties. Id. § 113.059 (Vernon 1995).



      The Texas Supreme Court has recently affirmed that exculpatory clauses in trusts regarding
the statutory and common-law duties of trustees are valid under the Trust Code and are not
precluded by public policy. Texas Commerce Bank, N.A. v. Grizzle, 96 S.W.3d 240, 248 (Tex.
2002). In Grizzle, a case involving alleged self-dealing by the trustee, the Court held that “the
trust Code authorizes a settlor to exonerate a corporate trustee from almost all liability for self-dealing,” such as misapplying or mishandling trust funds, including failing to promptly reinvest
trust monies. Id. at 250. Applying Grizzle to the Clifton trusts, and absent an allegation of a
personal act of dishonesty or any proof thereof, there is no issue of fact about whether the Bank
is exculpated from any wrongdoing regarding its allocation of the proceeds. Tex. R. Civ. P.
166a(c); Rhone-Poulenc, 997 S.W.2d at 222.
      We overrule the issue. Accordingly, we do not reach the Bank’s other arguments in favor of
summary judgment.
Conclusion
      Having overruled Clifton’s issues, we affirm the judgment.
 
                                                                   BILL VANCE
                                                                   Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed May 7, 2003
[CV06]