**RHÔNE–POULENC, INC., Petitioner,**

v.

**Kenda STEEL, individually and on behalf of her minor children, Garrison STEEL, Samantha Gail Steel, and a/n/f of Gregory Steel, a minor child, now deceased and on behalf of the Estate of Gregory Steel, Respondents.**

No. 98–0130.

Supreme Court of Texas.

Argued Oct. 20, 1998.

Decided July 1, 1999.

---

Marie R. Yeates, Houston, Robert L. LeBoeuf, Angelton, Gwen J. Samora, Houston, Bebe H. Kivitz, Michael T. Starczewski, Philadelphia, PA, for Petitioner.

Richard S. London, Pete T. Patterson, John L. Barnes, Houston, for Respondents.

Justice BAKER delivered the opinion of the Court in which Chief Justice PHILLIPS, Justice ENOCH, Justice OWEN, Justice ABBOTT, Justice HANKINSON, Justice O'NEILL and Justice GONZALES joined.

This summary judgment case involves an alleged latent occupational disease. The sole issue is whether the trial court's case management orders shifted the burden of proof from the movant, Rhône–Poulenc, to the nonmovants, the Steels, in a summary judgment proceeding under Rule 166a(c) of the Texas Rules of Civil Procedure. Because Rule 166a(c) requires a summary judgment movant to prove it is entitled to judgment as a matter of law, we conclude that the orders did not shift the burden from Rhône to the Steels. We also conclude that Rhône's summary judgment evidence did not meet Rule 166a(c)'s burden. Accordingly, we affirm the court of appeals' judgment, albeit for reasons different from those the court of appeals expressed.

## I. BACKGROUND

From November 1986 to early 1990, Jeffrey Steel worked at Rhône's Freeport, Texas, rare earths processing facility. At this facility, workers extract rare earth elements from special ores for use in automotive catalytic converters, television picture tubes, and related products. The ores used in the rare earth's separation process contain naturally occurring,

low-level radioactive material. During processing, the radioactive material is removed from the ore, drummed, and disposed of under state and federal regulatory requirements. Steel was responsible for filtering out the radioactive material and then drumming the waste. He was also responsible for cleaning the filtration system and storing the residue in sumps after electrical or mechanical failures at Rhône. Every three to four months Steel was responsible for cleaning the sumps, which required him to physically remove the waste in buckets and put it in the drums. Steel asserted that during these activities he was exposed to, splattered with, and sometimes ingested the radioactive waste residue.

On October 6, 1989, a physician diagnosed Steel, at age twenty-eight, with anaplastic oligodendroglioma, a rare form of brain cancer. On September 21, 1992, Steel and his wife, Kenda, sued ninety defendants including Rhône. The Steels claim that Steel's exposure to various substances while working at Rhône caused him to develop brain cancer. Rhône raised the two-year statute of limitations as a defense. The Steels then pleaded the discovery rule and asserted that they did not discover the cause of Steel's injury until September 19, 1990.[1] On this date, Kenda Steel read a newspaper article about companies in Freeport voluntarily agreeing to reduce plant emissions because of pressure from the Environmental Protection Agency. This article referred to "cancer risks" at plants where emission reductions were to take place. Mrs. Steel testified that she first realized that her husband's brain tumor was connected with his work at Rhône when she read the newspaper article.

In March 1993, the Steels filed an amended petition and asserted claims on behalf of their minor son, Gregory Steel, who died from leukemia on June 22, 1991.

The Steels claim that while Jeffrey Steel worked at Rhône, he unknowingly and inadvertently brought radioactive residue home on his clothing and shoes. The Steels asserted that Gregory was thus exposed to these hazardous substances and that as a result, Gregory contracted leukemia and died.

During the litigation, the trial court issued two agreed case management orders. The trial court issued the first order on January 26, 1993. That order required the Steels to provide to all defendants: (1) an affidavit signed by Jeffrey Steel detailing his exposure to specific chemicals; and (2) an affidavit signed by a qualified medical doctor stating the doctor's medical opinion, based on a reasonable degree of medical probability, that exposure to specific chemicals in the manner described in Jeffrey Steel's affidavit, was, for each chemical, a substantial contributing cause of Steel's brain cancer. The doctor's affidavit was also to provide the basis for that doctor's opinion including reliance, if any, upon specific epidemiological, toxicological, or other medical studies.

On April 28, 1993, the trial court signed a second order, which required: (1) a second affidavit by Jeffrey Steel detailing each exposure to specific chemicals that he believed caused his son, Gregory, to receive exposure to such chemicals; and (2) an affidavit by a qualified medical doctor stating the doctor's medical opinion, based on a reasonable degree of medical probability, that exposure to specific chemicals in the manner described in Jeffrey Steel's second affidavit was, for each chemical, a substantial contributing cause of Gregory Steel's leukemia. The doctor's affidavit was also to provide the basis for that doctor's opinion including reliance, if any, upon specific epidemiological, toxicological, or other medical studies.

In response to the orders, the Steels provided Jeffrey Steel's affidavit, including

---

1. Because September 19, 1992 fell on a Saturday, the Steels' lawsuit, filed on September 21, 1992, the first Monday after September 19, 1992, was, under Texas Rule of Civil Procedure 4, within two years from September 19, 1990. *See* Tex.R. Civ. P. 4.

a list of chemicals to which he was exposed and their origin. Initially, rather than an affidavit, the Steels provided a letter from Dr. Daniel Teitelbaum, a clinical toxicologist, which stated that there was a greater probability than not that the radioactive and organic materials to which Jeffrey Steel was exposed in the course of his work at Rhône were the sole cause or contributed substantially to the cause of Jeffrey Steel's brain tumor and Gregory Steel's leukemia.

In October 1994, all defendants, including Rhône, moved for summary judgment. The defendants asserted as grounds for their motion that the Steels could not prove causation for Jeffrey Steel's brain tumor or Gregory Steel's leukemia and that limitations barred Jeffrey Steel's claims against all defendants. The defendants supported their motion with an affidavit from Stanley M. Pier, Ph.D., an environmental toxicologist, who stated in his affidavit:

> Plaintiffs basically speculate that for some unspecified period of time, Jeffrey and Gregory Steel may have come into contact with a small amount of unknown chemicals, which plaintiffs allege may have caused their diseases, while at the same time selectively ignoring all other factors in cancer causation such as alcohol, tobacco, drugs and diet, for example. Essentially, plaintiffs attempt to take an unknown exposure to unknown quantities of unknown chemicals and opine causation with a reasonable medical certainty. This flaunts all processes of scientific reasoning.
>
> . . . .
>
> Before a physician/scientist/plaintiff can state that a known carcinogen can cause or has caused a given cancer, the plaintiff/physician/scientist must have a definition of the substance involved and the characteristics of the exposure.... Absent chemical or exposure information, no physician/scientist/plaintiff can possibly establish a medical link within a

reasonable certainty, between a carcinogenic agent and a particular cancer.

In response to the defendants' motions for summary judgment, the Steels provided Dr. Teitelbaum's affidavit, Kenda Steel's affidavit, and the September 19, 1990 article linking chemicals from work sites to cancer. In February 1995, the trial court granted summary judgment for all defendants except Rhône. The trial court's order stated that limitations barred all the Steels' claims by and through Jeffrey Steel, and that all the Steels' claims by and through Gregory Steel failed for want of medical causation.

Rhône again moved for summary judgment asserting that limitations barred the damages claims derivative of Jeffrey Steel's own claims, limitations barred claims for Gregory Steel's death, and there was no competent summary judgment evidence of exposure or causation that raised a fact issue on the cause of Gregory Steel's death. The Steels responded, attaching their original response to the original motion, a second affidavit from Dr. Teitelbaum, and other documents.

Those defendants who had previously received summary judgment moved for severance. The trial court initially granted a severance, but subsequently rescinded the severance order, granted Rhône's motion for summary judgment, and rendered a final judgment disposing of the Steels' claims against all defendants. The judgment stated that the court ruled that limitations barred the Steels' claims against all defendants. The judgment further stated that the Steels waived their right to appeal the earlier judgment against all defendants, except Rhône, and that the appellate time limits had run on those defendants. Consequently, the Steels appealed only their claims against Rhône.

In the court of appeals, the Steels asserted that the trial court erred in granting Rhône summary judgment on limitations. The Steels argued that the discovery rule tolled limitations on Jeffrey Steel's claims and a genuine materi-

al fact issue existed about the date the Steels discovered their injuries. Rhône argued that Jeffrey Steel's injury was not inherently undiscoverable because he knew of the nature of his injury on October 6, 1989, when he was diagnosed with a brain tumor and knew he had previously worked with chemicals. Therefore, the discovery rule did not apply in that limitations was tolled only until October 6, 1989, at the latest. The court of appeals held that the discovery rule did apply to Jeffrey Steel's injury and that Rhône did not negate the discovery rule by proving as a matter of law when Jeffrey Steel should have discovered the nature of his actionable injury. The court of appeals concluded that a material fact issue remained about when Jeffrey Steel should have reasonably discovered the nature of his injury. 962 S.W.2d 613, 620

The Steels also asserted that they raised a material fact issue on the cause of Jeffrey Steel's brain tumor and Gregory Steel's leukemia. Rhône challenged the competency and admissibility of the Steels' affidavits. Rhône asserted that Jeffrey Steel's affidavit was conclusory and inadmissible hearsay and that Dr. Teitelbaum's affidavit was incompetent because it was based on inadmissible hearsay and not personal knowledge. The court of appeals held that Jeffrey Steel's statement that the chemicals and waste contributed to his son's death was not based on his personal knowledge, but was conclusory and, therefore, not competent summary judgment evidence. The court of appeals concluded that Jeffrey Steel's statement about his job responsibilities, the processes and chemicals involved in his job activities, and how radioactive substances came into contact with his skin and clothing were competent summary judgment evidence. The court of appeals also concluded that Dr. Teitelbaum's affidavit was competent summary judgment evidence to controvert Dr. Pier's

affidavit. The court of appeals concluded that the Teitelbaum affidavit raised material fact issues about Jeffrey and Gregory Steels' specific exposures to chemicals and the causal connection between those exposures and their deaths. Accordingly, the court of appeals reversed the trial court's summary judgment and remanded the cause for further proceedings.

Rhône petitioned this Court for review, asserting that the case management orders shifted the burden of proof from Rhône as the movant to the Steels as the nonmovants and that the Steels failed to present competent summary judgment evidence to raise a fact issue on limitations and causation. Specifically, Rhône argues that: (1) limitations bars Jeffrey Steel's claims because he admittedly learned of his injury more than two years before the Steels filed suit; (2) the discovery rule does not apply to Jeffrey Steel's claims; (3) even if the discovery rule applies to Jeffrey Steel's claims, those claims are still barred by limitations; and (4) the Steels did not raise a material fact issue about causation on Gregory Steel's leukemia.

## II. SUMMARY JUDGMENT

### A. BURDEN OF PROOF

■ Rule 166a provides a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine fact issue. See *Swilley v. Hughes*, 488 S.W.2d 64, 68 (Tex.1972). The party moving for summary judgment carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. See TEX.R. CIV. P. 166a(c); [2] *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993); *Nixon v. Mr. Property Mgt. Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Calvillo v. Gonzalez*, 922 S.W.2d 928, 929 (Tex.1996). The nonmovant has no burden to respond to a summary judgment motion unless the movant

---

**2.** Rhône filed its motion for summary judgment before September 1, 1997, the effective date of Rule 166a(i). See TEX.R. CIV. P. 166a(i).

conclusively establishes its cause of action or defense. *See Oram v. General Am. Oil Co.*, 513 S.W.2d 533, 534 (Tex.1974); *Swilley*, 488 S.W.2d at 67–68. The trial court may not grant summary judgment by default because the nonmovant did not respond to the summary judgment motion when the movant's summary judgment proof is legally insufficient. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The movant must establish its right to summary judgment on the issues expressly presented to the trial court by conclusively proving all elements of the movant's cause of action or defense as a matter of law. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995); *City of Houston*, 589 S.W.2d at 678.

 A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *See Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex.1997). When the plaintiff pleads the discovery rule as an exception to limitations, the defendant must negate that exception as well. *See Velsicol*, 956 S.W.2d at 530; *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990); *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 n. 2. (Tex.1988).[3]

### B. Standard of Review

 Summary judgments must stand on their own merits. Accordingly, on appeal, the nonmovant need not have answered or responded to the motion to contend that the movant's summary judgment proof is insufficient as a matter of law to support summary judgment. *See City of Houston*, 589 S.W.2d at 678. When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant. *See Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997);

*Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex.1996); *Wornick*, 856 S.W.2d at 733. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *See Science Spectrum, Inc.*, 941 S.W.2d at 911; *Friendswood Dev. Co.*, 926 S.W.2d at 282; *Wornick*, 856 S.W.2d at 733; *Nixon*, 690 S.W.2d at 548–49. On appeal, the movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See Nixon*, 690 S.W.2d at 548.

### III. ANALYSIS

Rhône presents four issues to this Court: (1) whether limitations bars Jeffrey Steel's claims because he admittedly learned of his injury more than two years before the Steels filed suit; (2) whether the discovery rule applies to Jeffrey Steel's claims; (3) if the discovery rule applies to Jeffrey Steel's claims, whether those claims are barred under the discovery rule; and (4) whether the Steels raised a material fact issue about causation on Gregory Steel's leukemia.

 Rhône concedes that, ordinarily, as the movant for summary judgment on limitations grounds, it would have the burden to prove that the discovery rule does not apply to Jeffrey Steel's claims, or if it does apply, to negate the discovery rule. But Rhône argues that the first agreed case management order shifted the burden of raising a fact issue on limitations and on the discovery rule to the Steels. Rhône contends that this case is not in the posture of a pre-September 1997 summary judgment motion on the causation element, when a defendant must have conclusively negated that element of a plaintiff's cause of action. Additionally, Rhône contends that the second agreed case management order shifted the burden of raising a material fact issue on the causation element to

3. However, the rule is to the contrary in a trial on the merits. The party seeking the benefit of the discovery rule to avoid limitations has the burden of pleading and proving the discovery rule in a trial on the merits. *See Woods*, 769 S.W.2d at 518.

the Steels. Rhône asserts that the burden the Steels assumed is much like the burden every plaintiff now faces when opposing a "no evidence" summary judgment motion under recently amended Texas Rule of Civil Procedure 166a(i). We disagree.

First, Rule 166a(c) governs Rhône's summary judgment motion. *See* Tex.R. Civ. P. 166a(c). Rule 166a(c) clearly requires that Rhône, as the moving party, has the burden to establish that no material fact issue exists and that it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Calvillo,* 922 S.W.2d at 929. Second, neither of the agreed case management orders facially purports to shift the burden of raising fact issues on limitations, the discovery rule, or causation to the Steels. The Steels only agreed to and the orders only obligated them to provide, on a day certain, the affidavits described above. We conclude that neither case management order served to shift the burden of proof under Rule 166a(c). Accordingly, Rhône has the burden to conclusively establish limitations, conclusively establish that the discovery rule does not apply to Jeffrey Steel's claims, conclusively negate the discovery rule if it does apply, and conclusively establish that there is no causation between Jeffrey Steel's exposure and Gregory Steel's leukemia. *See Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). Consequently, we consider whether Rhône's motion for summary judgment and its supporting summary judgment evidence meets its burden as it pertains to the issues Rhône raises.

■ In its amended motion for summary judgment, Rhône relied solely on Dr. Pier's affidavit, which Rhône filed in support of its first summary judgment motion. Dr. Pier's affidavit is limited to challenging the competency and admissibility of the Steels' affidavits and Dr. Teitelbaum's opinion letter.[4]

We conclude, as Rhône conceded in oral argument, that Dr. Pier's affidavit does not prove as a matter of law that it was not objectively verifiable that there was a causal link between Jeffrey Steel's brain tumor and his exposure to radioactive materials at Rhône's facility. Consequently, Rhône did not carry its summary judgment burden because its summary judgment evidence did not prove as a matter of law that the discovery rule does not apply in this case.

■ Because we conclude that Rhône did not conclusively prove that the discovery rule does not apply, we assume, but do not decide, that the discovery rule applies for purposes of determining whether Rhône negated the discovery rule as a matter of law. *See Science Spectrum, Inc.,* 941 S.W.2d at 911; *Wornick,* 856 S.W.2d at 733; *Nixon,* 690 S.W.2d at 548–49. The parties assume, for purposes of this appeal, that Jeffrey Steel's brain tumor is a latent occupational disease. We likewise assume, but do not decide, the same fact for purposes of this appeal. Therefore, to sustain its burden of proof, Rhône was required to offer summary judgment evidence to show, as a matter of law, that, before September 19, 1990, the Steels knew or in the exercise of reasonable diligence should have known that Jeffrey Steel's brain tumor was likely work-related. *See Childs v. Haussecker,* 974 S.W.2d 31, 33 (Tex.1998). Rhône offered no such evidence. Consequently, a fact question exists about whether the Steels knew or should have known before September 19, 1990, through the exercise of reasonable diligence, that the brain tumor was likely work-related. Accordingly, the court of appeals correctly determined that Rhône was not entitled to summary judg-

4. We note that Dr. Pier's affidavit does not challenge Dr. Teitelbaum's later-filed affidavits.

ment on Jeffrey Steel's claims on limitations grounds.

■ Finally, Rhône had to negate the causation element on Gregory Steel's leukemia by establishing that no genuine issue of material fact existed about whether Gregory Steel's alleged exposure to the radioactive materials his father brought home caused Gregory to contract leukemia and die from that disease. *See Wornick*, 856 S.W.2d at 733. As Rhône recognizes, Dr. Pier's affidavit does not contain any summary judgment evidence that would establish, as a matter of law, that there is no causal connection between Gregory Steel's leukemia and the radioactive materials Jeffrey Steel carried home from Rhône's Freeport facility. Furthermore, the Steels, as the nonmovants, needed no answer or response to Rhône's motion to contend that Rhône did not carry its summary judgment burden. *See City of Houston*, 589 S.W.2d at 678. Consequently, we conclude that Rhône did not carry its summary judgment burden to disprove causation as a matter of law.

## IV. CONCLUSION

We hold that the trial court's case management orders did not shift the Rule 166a(c) summary judgment burden from Rhône, the movant, to the Steels, the nonmovants. We hold that Rhône did not carry its summary judgment burden to prove as a matter of law that limitations barred Jeffrey Steel's claims or that Jeffrey Steel's exposure to radioactive materials at Rhône's Freeport facility did not cause Gregory Steel's leukemia. Accordingly, we affirm the court of appeals' judgment.

Justice HECHT filed a dissenting opinion.

Justice HECHT, dissenting.

I respectfully dissent. Plaintiffs agreed to pretrial orders requiring them to produce, by a specified date, a qualified medi-cal doctor's affidavit stating that Jeffrey Steel's claimed exposure to chemicals at work was, in reasonable medical probability, a substantial contributing cause of his brain cancer and his son's leukemia, and stating the basis for that opinion. Without such evidence plaintiffs cannot prevail on their claims against Rhône–Poulenc. Plaintiffs did not produce an affidavit within the time agreed. The orders stated that the parties could move for modifications or for further pretrial orders. Plaintiffs did not do so. Plaintiffs later presented a physician's affidavit in response to Rhône–Poulenc's motion for summary judgment that contained the required opinion regarding causation but offered no basis for it.

In *Koslow's v. Mackie*, we held that a trial court can strike a party's pleadings for disobeying a pretrial order under Rule 166 of the Texas Rules of Civil Procedure.[1] The district court in the present case did not impose this sanction on the plaintiffs. It allowed plaintiffs to present a physician's affidavit in response to Rhône–Poulenc's motion for summary judgment. But because this affidavit did not state a reliable basis for the physician's opinion—evidence that the plaintiffs had agreed to produce, that the pretrial orders required, and that is essential to their claims—the district court granted summary judgment for Rhône–Poulenc. The Court holds that the district court impermissibly shifted the summary judgment burden by relieving Rhône–Poulenc of its burden to disprove an element of the plaintiffs' claims, and by placing on the plaintiffs the burden of raising a fact issue. Assuming the Court is correct, I fail to see how the plaintiffs were harmed when the district court was fully authorized by Rule 166 to strike the plaintiffs' pleadings and dismiss their claims outright without allowing their belated efforts to produce the necessary evidence. Plaintiffs' failure to comply with the agreed pretrial orders was not technical,

---

1. 796 S.W.2d 700, 703–705 (Tex.1990).

inadvertent, or otherwise excusable; rather, they were unable to produce essential evidence in support of their claims even long after they had agreed to do so. In these circumstances, I would hold that the district court's dismissal of plaintiffs' claims was not reversible error.