TIG v. Pemberton

















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-155-CV

     TIG PREMIER INSURANCE COMPANY,
                                                                              Appellant
     v.

     JOHN PEMBERTON
     AND TEXAS WORKERS' 
     COMPENSATION COMMISSION,
                                                                              Appellees
 

 From the 170th District Court
McLennan County, Texas
Trial Court # 99-2617-4
                                                                                                                

O P I N I O N
                                                                                                                

      In 1996, John Pemberton was injured on the job when he fell over a railing and hurt his right
shoulder and left knee. His employer had worker’s compensation insurance with TIG Premier
Insurance (TIG), which did not contest the compensability of Pemberton’s injury. Three months
after his fall, Pemberton was hospitalized and diagnosed with deep vein thrombosis (DVT), i.e.,
blood clots, in his right leg.
      Two years later, after the parties could not agree on Pemberton’s impairment rating, the Texas
Workers’ Compensation Commission (TWCC) designated Dr. Leslie Bishop to conduct an
impairment-rating examination on which impairment-income benefits could be based. Tex. Lab.
Code Ann. §§ 408.123, 408.124 (Vernon 1996 & Supp. 2003). He assessed a ten- percent
impairment rating, two percent of which was for the DVT. TIG was notified at the time of
Bishop’s findings, including those about the DVT, and it did not dispute the findings at that time. 
But six months later, TIG filed a dispute complaining that the DVT was not caused by the fall but
rather was a result of three prior surgeries on the right knee combined with prolonged
convalescence after the fall, and therefore was not compensable. Furthermore, TIG argued that
the statute requiring a carrier to contest an injury within sixty days of learning of it did not apply
because that statute pertains only to whether the carrier disputes the overall injury after initially
learning of an employee’s claim, and not to disputes which arise later about the extent or specific
aspect of the injury. Id. § 409.021(c) (Vernon 1996).



      There was a contested hearing before a TWCC hearings officer, and the officer found that,
although Pemberton did not show a causal relationship between the fall and the DVT, TIG waived
any complaint by not contesting the DVT within sixty days of learning of Bishop’s findings. 
Pemberton did not appeal the finding of no causal relationship, and therefore that decision became
final and binding. Id. § 410.169 (Vernon 1996). TIG appealed the finding about the sixty-day
rule. An appeals panel affirmed the hearing officer’s finding applying the rule. TIG filed suit in
district court for judicial review of the appeals panel’s decision and argued against the application
of the sixty-day rule. Id. subch. G (Vernon 1996). TWCC and TIG filed competing motions for
summary judgment; TWCC’s motion was based on the sixty-day rule. The trial court granted
TWCC’s motion, affirmed the appeals panel’s decision, and denied TIG’s motion. TIG appeals,
complaining that the sixty-day rule does not apply. Because we agree, we will reverse the
summary judgment and render judgment for TIG.
Standard of Review for Summary Judgments
      We review a summary judgment de novo. Rucker v. Bank One Texas, N.A., 36 S.W.3d 649,
653 (Tex. App.—Waco 2000, pet. denied). “Rule 166a provides a method of summarily
terminating a case when it clearly appears that only a question of law is involved and that there
is no genuine fact issue.” Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 222 (Tex. 1999). The
movant has the burden to prove by summary-judgment evidence that “there is no genuine issue
as to any material fact and the moving party is entitled to judgment as a matter of law on the issues
expressly set out in the motion.” Tex. R. Civ. P. 166a(c); Rhone-Poulenc, 997 S.W.2d at 222;
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548 (Tex. 1985). We must accept as
true all evidence that is favorable to the non-movant, and we must resolve all doubts and indulge
every reasonable inference regarding the existence of a genuine issue of fact in favor of the
non-movant. Rhone-Poulenc, 997 S.W.2d at 223; Nixon, 690 S.W.2d at 548-49.
      When competing motions for summary judgment are filed and one is granted and one denied,
the appellate court should determine all questions presented and should render the judgment the
trial court should have rendered. FM Properties Operating v. City of Austin, 22 S.W.3d 868, 872
(Tex. 2000); Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988); see also Tobin v. Garcia, 316
S.W.2d 396, 400 (Tex. 1958). But this is only so if, as here, both parties’ motions sought final
judgment, i.e., relief on all issues. Montgomery v. Blue Cross & Blue Shield, 923 S.W.2d 147,
152 (Tex. App.—Austin 1996, writ denied); Runyan v. Mullins, 864 S.W.2d 785, 790 (Tex.
App.—Fort Worth 1993, writ denied.).
Rules of Statutory Construction
      The propriety of this summary judgment turns on the construction of section 409.021(c) of
the Labor Code. Tex. Lab. Code Ann. § 409.021. Statutory construction issues are legal
questions reviewed de novo. Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex. 1989). 
In construing a statute, the reviewing court should determine and give effect to the Legislature's
intent. National Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000); Liberty Mut.
Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 484 (Tex. 1998). The court must first
look at the statute's plain and common meaning. Allen, 15 S.W.3d at 527; Fitzgerald v. Advanced
Spine Fixation, 996 S.W.2d 864, 865 (Tex. 1999). The court presumes that the Legislature
intended the plain meaning of the words it used. Allen, 15 S.W.3d at 527. And words, unless
used as a term of art or connected with a particular trade or subject matter, are given their
ordinary meaning. In re BACALA, 982 S.W.2d 371, 380 (Tex. 1998); Tex. Gov’t Code Ann.
§ 312.002(a) (Vernon 1998). If the statute is unambiguous, the reviewing court typically adopts
the interpretation supported by the plain meaning of the statute's words; rules of construction and
extrinsic aids should not be applied, nor extraneous matters inquired into. Allen, 15 S.W.3d at
527 (extraneous matters); Fitzgerald, 996 S.W.2d at 865-66 (rules of construction and extrinsic
aids).
      But if the statute is ambiguous, i.e., the intent of the Legislature is not clear, the reviewing
court then turns to the legislative history of the statute, the nature and object to be obtained by the
statute, and the consequences that would follow from alternative constructions. In re BACALA,
982 S.W.2d at 380. Also, the court should consider the entire act when construing a portion of
it, e.g., the meaning and use of a term throughout the act. Jones v. Fowler, 969 S.W.2d 429, 432
(Tex. 1998). In addition, “[c]onstruction of a statute by an agency charged with its enforcement
is entitled to serious consideration [if] that construction is reasonable and does not contradict the
statute’s plain language.” Continental Cas. Co. v. Downs, 81 S.W.3d 803, 807 (Tex. 2002).
      Other matters the court may consider are listed in the Code Construction Act, which is
applicable to enactments by the 60th Legislature in 1967 and thereafter:
In construing a statute, whether or not the statute is considered ambiguous on its face, a court
may consider among other matters the:

            (1) object sought to be attained;
            (2) circumstances under which the statute was enacted;
            (3) legislative history;
(4) common law or former statutory provisions, including laws on the same or similar
subjects;
(5) consequences of a particular construction;
(6) administrative construction of the statute; and
(7) title (caption), preamble, and emergency provision.

Tex. Gov’t Code Ann. § 311.023 (Vernon 1998).
TWCC’s Motion for Summary Judgment
      The statute at issue is section 409.021:
§ 409.021. Initiation of Benefits; Insurance Carrier's Refusal; Administrative Violation
 
(a) An insurance carrier shall initiate compensation under this subtitle promptly. Not later
than the seventh day after the date on which an insurance carrier receives written notice of an
injury, the insurance carrier shall: 
 
(1) begin the payment of benefits as required by this subtitle; or 
(2) notify the commission and the employee in writing of its refusal to pay and advise the
employee of: 

                  (A) the right to request a benefit review conference; and 
                  (B) the means to obtain additional information from the commission. 
 
(b) An insurance carrier shall notify the commission in writing of the initiation of income or
death benefit payments in the manner prescribed by commission rules. 
 
(c) If an insurance carrier does not contest the compensability of an injury on or before
the 60th day after the date on which the insurance carrier is notified of the injury, the
insurance carrier waives its right to contest compensability. The initiation of payments
by an insurance carrier does not affect the right of the insurance carrier to continue to
investigate or deny the compensability of an injury during the 60-day period. 
 
(d) An insurance carrier may reopen the issue of the compensability of an injury if there is
a finding of evidence that could not reasonably have been discovered earlier. 
 
(e) An insurance carrier commits a violation if the insurance carrier does not initiate payments
or file a notice of refusal as required by this section. A violation under this subsection is a
Class B administrative violation. Each day of noncompliance constitutes a separate violation. 

Tex. Lab. Code Ann. § 409.021 (emphasis added).
      The parties agree that TIG received Bishop’s written report on April 24, 1998, but did not
dispute the finding about the DVT until October 14, 1998. Therefore, TIG waited almost six
months before complaining about the DVT being included in the impairment rating. TWCC and
Pemberton argue that that is a clear violation of section 409.021(c)’s sixty-day rule.
      But TIG argues that section 409.021 pertains only to a carrier’s initial response to notice of
injury. It asserts that not contesting the overall injury does not preclude it from later contesting
a specific part of the injury, in this case the DVT, which it calls an “extent-of-injury” matter.
      We find that the statute is somewhat ambiguous. After applying the rules of statutory
construction, we agree with TIG.
      First, by its express wording and also by its context, section 409.021 pertains only to the
overall injury. It is entitled “Initiation of Benefits; Insurance Carrier’s refusal; Administrative
Violation.” (Emphasis added). Also, four of its subsections, “a,” “b,” “c,” and “e,” use,
respectively, the terms “initiate compensation, “initiation of income or death benefit payments,”
initiation of payments,’ and “initiate payments.” Thus by its express terminology the section
pertains to the initial response by the carrier after receiving notice that an employee has been
injured. In addition, the section is part of chapter 409 which addresses procedures for initiating
benefits when an employee is injured. Thus, read in context, section 409.021 pertains only to the
initiation of benefits.
      Second, other workers compensation statutes allow for contesting individual claims or parts
of the overall claim without regard to the sixty-day restriction. For instance, section 408.027
allows a carrier to refuse payment for medical services, or reduce the amount from that charged,
if the carrier disputes the amount of payment or the entitlement to payment. Id. § 408.027
(Vernon Supp. 2003). The carrier is entitled to a hearing on the matter. Id. In addition, a carrier
may dispute an impairment rating. Id. § 408.125 (Vernon Supp. 2003). Finally, chapter 410 sets
forth a variety of procedures for adjudication of any disputes regarding compensation as they arise. 
Id. ch. 410 (Vernon 1996 & Supp. 2003).
      Third, amendments made to the administrative regulations in March 2000, while not in effect
at the time of the appeals panel’s decision in July 1999, support our conclusion. Specifically,
there is section 124.3(c):

      § 124.3. Investigation of an Injury and Notice of Denial/Dispute 
 
(a) Except as provided in subsection (b) of this section, upon receipt of written notice of
injury as provided in § 124.1 of this title (relating to Notice of Injury) the carrier shall
conduct an investigation relating to the compensability of the injury, the carrier's liability for
the injury, and the accrual of benefits. If the carrier believes that it is not liable for the injury
or that the injury was not compensable, the carrier shall file the notice of denial of a claim
(notice of denial) in the form and manner required by § 124.2 of this title (relating to Carrier
Reporting and Notification Requirements). 
 
(1) If the carrier does not file a notice of denial by the seventh day after receipt of the
written notice of injury, the carrier is liable for any benefits that accrue and shall initiate
benefits in accordance with this title. 
 
(2) If the carrier files a notice of denial after the seventh day but before the 60th day after
receipt of written notice of the injury, the carrier is liable for and shall pay all benefits
that had accrued and were payable prior to the date the carrier filed the notice of denial
and only then is it permitted to suspend payment of benefits. 
 
(3) If the carrier wants to deny compensability of or liability for the injury after the 60th
day after it received written notice of the injury 
 
(A) the carrier must establish that the evidence that it is basing its denial on could not
have reasonably been discovered earlier. 
 
(B) the carrier is liable for and shall pay all benefits that were payable prior to and
after filing the notice of denial until the Commission has made a finding that the
evidence could not have reasonably been discovered earlier. 
 
(b) If the claim involves the death of an injured employee, investigations, denials of
compensability or liability, and disputes of the eligibility of a potential beneficiary to receive
death benefits are governed by § 132.17 of this title (relating to Denial, Dispute, and Payment
of Death Benefits). 
 
(c) Texas Labor Code, § 409.021 and subsection (a) of this section do not apply to
disputes of extent of injury. If a carrier receives a medical bill that involves treatment(s) or
service(s) that the carrier believes is not related to the compensable injury, the carrier shall
file a notice of dispute of extent of injury (notice of dispute). The notice of dispute shall be
filed in accordance with § 124.2 of this title and be filed not later than the earlier of: 

            (1) the date the carrier denied the medical bill; or 
 
(2) the due date for the carrier to pay or deny the medical bill as provided in Chapter 133
of this title. 
28 Tex. Admin. Code § 124.3 (West 2003) (emphasis added).
      In conclusion, TIG was not bound by the sixty-day rule in contesting the inclusion of the DVT
in Pemberton’s impairment rating, and the trial court erred in determining that it was. We sustain
the issue.
TIG’s Motion for Summary Judgment
      We also will render judgment for TIG. Its motion requested final judgment based on the
hearing officer’s finding that there was no causal relationship between the fall and the DVT. 
TWCC did not contend otherwise or present summary judgment evidence that there was a causal
relationship. It based its motion for summary judgment solely on the sixty-day rule. Also,
Pemberton forfeited any complaint about the causal relationship between his fall and the later-diagnosed condition, because he did not raise that with the appeals panel and so did not exhaust
administrative remedies. Tex. Labor Code Ann. §§ 410.252, 410.302 (Vernon 1996). Because
the complaint was forfeited, and alternatively because TIG’s summary judgment evidence
conclusively shows that there is no causal relationship, we will render judgment in favor of TIG. 
Id.; Tex. R. Civ. P. 166a(c); Rhone-Poulenc, 997 S.W.2d at 222.
Conclusion
      We construe section 409.021(c)’s sixty-day rule as applying only to the carrier’s initial
response to a notice that an employee has been injured. Therefore, the trial court erred as a matter
of law in granting TWCC’s motion for summary judgment on that basis. Also, TIG’s summary
judgment evidence establishes that there is no genuine issue as to the absence of a causal
connection between the fall and the DVT. Accordingly, we reverse the summary judgment and
render summary judgment for TIG.

                                                                   BILL VANCE
                                                                   Justice
Before Chief Justice Gray,
      Justice Vance, and
      Judge Allen (Sitting by Assignment)



Reversed and rendered
Opinion delivered and filed December 31, 2003
[CV06]