COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-203-CV
  
  
DANNY J. MCCLURE                                                             APPELLANT
   
V.
   
JPMORGAN CHASE BANK AS                                                   APPELLEE
INDEPENDENT EXECUTOR OF THE
ESTATE OF VIVIENNE REDLICH,
DECEASED
 
  
------------
 
FROM PROBATE COURT NO. 1 OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        Appellant 
Danny J. McClure appeals the trial court’s partial grant of summary judgment 
on the motion of Appellee JPMorgan Chase Bank as Independent Executor of the 
Estate of Vivienne Redlich, Deceased.  In two issues, McClure contends that 
the trial court erred (1) in granting JPMorgan’s motion for summary judgment 
as there was sufficient summary judgment evidence to raise genuine issues of 
material fact and (2) in finding that Vivienne Redlich’s revocation of the 
“Vivienne Redlich Trust” (“Trust”) was not delivered.  We will 
affirm.
I. Factual Background and Procedural History
        Vivienne 
Redlich executed a document on June 5, 1997 entitled “The Vivienne Redlich 
Trust” that named as trustee Texas Commerce Bank, now known as JPMorgan Chase 
Bank. Redlich amended her trust document on August 9, 2000, and on the same 
date, she also executed her last will and testament, leaving the majority of her 
probate estate to JPMorgan as Trustee of the Trust. Article 3.01 of the Trust 
provides for the amendment, modification, and revocation of the trust as 
follows:
  
This trust is revocable during Settlor’s lifetime. The Settlor shall have the 
power and right to amend, modify or revoke, in whole or in part, this Agreement 
or any terms or provisions thereof by notice in writing delivered to the 
Trustee.  Such amendment, modification or revocation shall be effective 
immediately upon delivery to the Trustee, except that changes with respect to 
the Trustee’s duties, liabilities or compensation shall not be effective 
without the Trustee’s written consent.  The Settlor shall further have 
the power and right to require and direct the Trustee to distribute to Settlor 
or to any other person designated by Settlor any property or properties held by 
the Trustee hereunder; provided, however, Settlor shall have the unlimited right 
during Settlor’s lifetime to withdraw all or any part of the trust 
corpus.  After the death of the Settlor, this trust shall be irrevocable 
and not subject to amendment or change by any person whomsoever. [Emphasis 
supplied.]
  
Redlich’s August 9, 
2000 will incorporates by reference the Vivienne Redlich Trust.
        Redlich 
died on December 15, 2001.  On January 24, 2002, JPMorgan filed an 
“Application for Probate of Will and Issuance of Letters 
Testamentary.”  JPMorgan filed Redlich’s self-proved will dated August 
9, 2000.  JPMorgan also filed a document dated November 12, 2001, which 
appears to be a handwritten will signed by Redlich.  JPMorgan alleged that 
the effect of the November 12, 2001 document on Redlich’s will “is unknown 
at this time.”
        On 
February 14, 2002, Appellant Danny McClure filed his “Opposition and Contest 
to Probate of Purported Will, Counter-Application for Probate of Holographic 
Will, and Original Petition for Declaratory Judgment.”  McClure describes 
himself as a “close personal family friend” of Redlich. McClure asserted 
that Redlich left a holographic will dated November 12, 2001, which 
“specifically revoke[s] a Trust which she had created prior to the time of the 
execution of the holographic Will.” Redlich’s purported holographic will 
states that, as a result of the revocation, “all property claimed to be held 
by the Trust should pass through Decedent’s holographic Will and pass as part 
of her residual estate,” with McClure named as the beneficiary.
        Both 
JPMorgan and McClure sought a declaratory judgment regarding the status of the 
Trust.  After both sides had conducted discovery, JPMorgan filed both a 
traditional and a no-evidence motion for summary judgment on August 7, 2002 and 
asked the trial court to declare that the Trust was not revoked by the November 
12, 2001 document offered by McClure.  McClure filed a response, and 
JPMorgan filed a motion to strike McClure’s affidavits and a reply to the 
response.
        The 
trial court conducted a hearing and denied the motion for summary judgment on 
October 16, 2002.  Thereafter, the parties conducted further discovery and 
prepared for trial.  However, by an order signed and dated June 16, 2003, 
the trial court granted JPMorgan’s motion for summary judgment without stating 
its grounds.  In a letter dated June 16, 2003, the trial court informed the 
parties that it was granting the summary judgment on the following bases:
  
A. The 
November 12, 2001 document fails to effectively revoke the Vivienne Redlich 
Trust.  After sufficient time for discovery, no evidence has been adduced 
as to any delivery of the purported revocation during the lifetime of the 
Decedent pursuant to the terms of §3.01 of the trust.
 
B. The 
November 12, 2001 document evinces no intent to revoke the August 9, 2000 
document, but recites that it is merely to “prevail over all previously signed 
testamentary papers and my prior agreements.”
 
C. The 
November 12, 2001 document is not ambiguous as to whether it supplements or 
supplants all provisions of the August 9, 2000 document.  It provides that 
the document will “prevail over all previously signed testamentary papers and 
my prior agreements.”  The effect of the document is to supplant Section 
II of the August 9, 2000 document only.  The provisions of Articles I and 
III are unaffected.
  
        McClure 
then moved for partial nonsuit to make the partial summary judgment a final, 
appealable order.  In pertinent part, McClure stated,
  
Contestant 
no longer desires to prosecute his claim for probate of a holographic will, a 
true and correct copy of which is attached to Contestant’s Application. 
Contestant further no longer desires to pursue his opposition to the probate of 
the will offered by JPMorgan Chase Bank. This non-suit is not meant to address 
those claims of Contestant previously dealt with by the Court in its Order 
Granting Partial Summary Judgment.
  
Subsequently, the court 
signed an order granting McClure’s motion for nonsuit without prejudice. On 
June 17, 2003, after hearing evidence and reviewing Redlich’s August 9, 2000 
will, the trial court signed an order admitting the August 9, 2000 will to 
probate and authorizing letters testamentary.
II. Effect of Nonsuit
        Before 
turning to the substance of McClure’s issues, we will address JPMorgan’s 
contention that we must dismiss this appeal on the basis that McClure’s 
nonsuit of both his claim for probate of the holographic document and his 
opposition to the probate of the will offered by JPMorgan render this appeal 
moot. See Tex. Dep’t of Transp. v. Barber, 111 S.W.3d 86, 92 (Tex. 
2003) (concluding constitutional questions were not moot before addressing 
merits of the petitioner’s claims), cert. denied, 124 S. Ct. 1404 
(2004); Bd. of Adjustment v. Wende, 92 S.W.3d 424, 426 (Tex. 2002) 
(“Before addressing the merits of this case, we must first determine whether 
the controversy has become moot.”).  Under the classic mootness doctrine, 
a justiciable controversy is definite and concrete and must impact the legal 
relations of parties having adverse legal interests.  Aetna Life Ins. 
Co. v. Haworth, 300 U.S. 227, 240-41, 57 S. Ct. 461, 464 (1937).  Our 
jurisdiction is restricted to such actual controversies. Camarena v. Tex. 
Employment Comm'n, 754 S.W.2d 149, 151 (Tex. 1988). A controversy must exist 
between the parties at every stage of the legal proceeding, including the 
appeal. Wende, 92 S.W.3d at 427.  Thus, when an appeal is moot, we 
must set aside the judgment and dismiss the cause.  City of Fort Worth 
v. Pastusek Indus., Inc., 48 S.W.3d 366, 371 (Tex. App.—Fort Worth 2001, 
no pet.).
        Texas 
Rule of Civil Procedure 162 permits a plaintiff to voluntarily dismiss or 
nonsuit a case “[a]t any time before the plaintiff has introduced all of his 
evidence other than rebuttal evidence.”  Tex. R. Civ. P. 162; Pace Concerts, 
Ltd. v. Resendez, 72 S.W.3d 700, 702 (Tex. App.—San Antonio 2002, pet. 
denied).  Courts in Texas have held that “a plaintiff has a right to take 
a nonsuit after the defendant files a motion for summary judgment, up to the 
time the court announces a summary judgment.”  Leon Springs Gas Co. v. 
Rest. Equip. Leasing Co., 961 S.W.2d 574, 577 (Tex. App.—San Antonio 1997, 
no pet.); see Pace Concerts, 72 S.W.3d at 702; Taliaferro v. Smith, 
804 S.W.2d 548, 550 (Tex. App.—Houston [14th Dist.] 1991, no writ); 
Extended Servs. Program, Inc. v. First Extended Serv. Corp., 601 S.W.2d 
469, 471 (Tex. Civ. App.—Dallas 1980, writ ref’d n.r.e.).
        And 
while a nonsuit may have the effect of vitiating a trial court’s earlier 
interlocutory orders, a nonsuit does not vitiate a trial court’s 
previously-made decision on the merits, such as a summary judgment.  Hyundai 
Motor Co. v. Alvarado, 892 S.W.2d 853, 854-55 (Tex. 1995).  In Hyundai, 
the court held that “[a] partial summary judgment is a decision on the 
merits[, which] becomes final upon the disposition of the other issues of the 
case.” Id. at 855; see also Newco Drilling Co. v. Weyand, 960 
S.W.2d 654, 656 (Tex. 1998) (holding court of appeals erred in failing to review 
the merits of the trial court’s grant of a partial summary judgment after the 
plaintiffs allowed their case to be dismissed for want of prosecution).
        Here, 
the trial court granted partial summary judgment on JPMorgan’s request for the 
trial court to declare that the November 12, 2001 document failed to revoke the 
Trust.  When McClure nonsuited his remaining claims, the nonsuit did not 
vitiate the trial court’s grant of the partial summary judgment, but rather 
made the partial summary judgment a final, appealable order.  See In re 
Bennett, 960 S.W.2d 35, 38 (Tex. 1997) (orig. proceeding), cert. denied, 
525 U.S. 823 (1998); Hyundai, 892 S.W.2d at 855; Le v. Kilpatrick, 
112 S.W.3d 631, 633 (Tex. App.—Tyler 2003, no pet.).  Because McClure’s 
issues on appeal concern only the trial court’s grant of the partial summary 
judgment, his issues on appeal are not moot.  See Bennett, 960 
S.W.2d at 38; Hyundai, 892 S.W.2d at 855; Le, 112 S.W.3d at 
633.  We therefore address the merits of the issues McClure raises on 
appeal.
III. Summary Judgment
        McClure 
challenges the trial court’s grant of partial summary judgment in two 
issues.  First, McClure generally argues that the trial court erred in 
granting JPMorgan’s motion for summary judgment because he presented 
sufficient summary judgment evidence to raise genuine issues of material 
fact.  Second, McClure specifically challenges the trial court’s finding 
that he presented no evidence of the delivery of the document that he argues 
revoked the Trust.  Although JPMorgan filed both traditional and 
no-evidence motions for summary judgment, we need only analyze JPMorgan’s 
traditional motion for summary judgment.  See Tex. R. Civ. P. 166a(c).
        A.     Standard 
of Review Under Rule 166a(c)
        In 
reviewing an appeal from a traditional motion for summary judgment, the issue is 
whether the movant met his summary judgment burden by establishing that no 
genuine issue of material fact exists and that the movant is entitled to 
judgment as a matter of law. Id.; S.W. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); City of Houston v. Clear Creek Basin Auth., 
589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and all 
doubts about the existence of a genuine issue of material fact are resolved 
against the movant. S.W. Elec. Power Co., 73 S.W.3d at 215; Rhone-Poulenc, 
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); Great Am. Reserve Ins. 
Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). 
Therefore, we must view the evidence and its reasonable inferences in the light 
most favorable to the nonmovant. Great Am., 391 S.W.2d at 47.
        In 
deciding whether there is a material fact issue precluding summary judgment, all 
conflicts in the evidence are disregarded and the evidence favorable to the 
nonmovant is accepted as true. Rhone-Poulenc, 997 S.W.2d at 223; Harwell 
v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995). Evidence 
that favors the movant’s position will not be considered unless it is 
uncontroverted. Great Am., 391 S.W.2d at 47.
        The 
summary judgment will be affirmed only if the record establishes that the movant 
has conclusively proved all essential elements of the movant’s cause of action 
or defense as a matter of law. Clear Creek Basin, 589 S.W.2d at 678.
        B.     Analysis
        On 
appeal, McClure “asks the Court to reverse the Trial Court and find that the 
Trial Court erred in granting the Motion for Summary Judgment as to revocation 
of the Trust.” As stated above, the Trust allowed Redlich during her lifetime 
to amend, modify, or revoke her trust “by notice in writing delivered to 
the Trustee.” [Emphasis supplied.] As both parties recognize in their 
briefs, the crux of this appeal is whether the November 12, 2001 document was 
delivered to the trustee JPMorgan before Redlich’s death, in accordance with 
the terms of the Trust. JPMorgan argues that it established as a matter of law 
that the November 12, 2001 document did not revoke the Trust because it was 
never delivered to JPMorgan before Redlich’s death.
        In 
Runyan v. Mullins, we held that “when the terms of a trust set out a 
specific method or manner in which to amend the trust, the Texas Trust Code 
indicates that those terms are controlling and must be followed.” 864 S.W.2d 
785, 789 (Tex. App.—Fort Worth 1993, writ denied) (citing Tex. Prop. Code Ann. § 111.002(a) 
(Vernon 1995)). Further, we stated that “if a settlor of a trust agreement 
reserves the power to modify the trust only in a specific manner, the trust can 
only be modified in that manner.” Id. at 790; see also George Gleason Bogert & George Taylor 
Bogert, The Law of Trusts and 
Trustees § 993 (rev. 2d ed. 1983) (“The ways in which the power may be 
used to alter or modify the trust will be determined by the language of the 
instrument, which may provide for alterations by described methods only . . . 
.”); Thomas M. Featherston, Jr., Note, The Revocation of an Inter Vivos 
Trust By a Will, 24 Baylor L. Rev. 
274, 281 (1972) (stating that if a trust instrument requires a “particular 
mode of revocation that should have been followed[,] . . . that method must 
have been complied with”).
        JPMorgan, 
as the applicant for probate of Redlich’s August 9, 2000 will, which 
incorporated the Trust by reference, bore the burden of establishing that the 
Trust was not revoked by the November 12, 2001 document. See Tex. Prob. Code Ann. § 88(b)(3) (Vernon 
2003). As part of its traditional motion for summary judgment, JPMorgan attached 
the Trust, the August 9, 2000 amendment to the Trust, and the affidavit of Larry 
Bothe, who is employed as Senior Vice-President of JPMorgan and, as such, served 
as the custodian of JPMorgan’s books and records. According to Bothe’s 
affidavit, JPMorgan “has served continuously as Trustee of the Trust since it 
was created on June 5, 1997.” Bothe referred to the terms of the Trust 
governing the particular manner of revocation during Redlich’s lifetime and 
the provision making the trust irrevocable once she died.
        Bothe’s 
affidavit stated that Redlich amended her trust once—on August 9, 
2000—before her death in December 2001. Such amendment was delivered to 
JPMorgan on August 9, 2000. Bothe further averred that, aside from the August 9, 
2000 amendment, “no other amendment, modification or revocation was made to 
the Trust or any terms or provisions stated therein[, and] neither Redlich nor 
anybody on her behalf delivered in writing any amendment, modification or 
revocation of either all or any part of the Trust prior to the death of 
Redlich.”
        In 
his affidavit, Bothe stated that he “made a diligent search and review of all 
of the records regarding Redlich and the Trust.” Bothe then stated,
  
There is no memorandum, report, record, or data compilation, in any form, that 
was delivered to JPMORGAN prior to the death of Redlich that contains any 
statement or reference regarding a desire or intent by Redlich to revoke, in 
whole or in part, the Trust. This is the kind of and [sic] it would be the 
regular practice of JPMORGAN to keep, maintain and preserve such a record. 
However, no such record exists.
 
Bothe’s affidavit then 
averred that he is familiar with McClure’s claims in this case but that 
“[t]he document attached to [McClure’s Opposition and Contest to Probate of 
Purported Will] and alleged to be a holographic will was never delivered to 
JPMORGAN prior to the death of Redlich.” Bothe’s affidavit continued, 
“Neither I nor JPMORGAN ever saw the alleged ‘holographic will’ until 
after the death of Redlich.”
        While 
McClure offered summary judgment evidence in response to JPMorgan’s motion for 
summary judgment, upon our review of the proffered evidence, assuming solely for 
the sake of argument that the November 12, 2001 document would have revoked the 
Trust, we find no summary judgment evidence raising a genuine issue of material 
fact that Redlich, before her death, delivered written notice of such revocation 
to JPMorgan as was required under the terms of the Trust. McClure points to the 
deposition testimony of Bothe, in which Bothe testified that he first found the 
November 12, 2001 document in a folder in a lockbox in Redlich’s apartment 
after she had died. Bothe testified that the November 12, 2001 document was not 
affixed to her will but that the bank would honor it “according to the 
determination of the Court.”
        McClure 
proffered an affidavit signed by Elizabeth Pickering, in which she averred that 
she had heard Redlich state “that she had decided to revoke her Trust and 
change her Will to redirect the proceeds to DANNY J. McCLURE.” Pickering’s 
affidavit also stated that “[Redlich] had made the changes necessary to make 
DANNY J. McCLURE the beneficiary of all of her property, including the property 
that had been in the VIVIENNE REDLICH Trust.” Further, Pickering averred, 
“During her lifetime, VIVIENNE REDLICH also told me that Larry Bothe at J.P. 
Morgan Chase Bank knew about the changes she had made to her Trust.”
        McClure 
also presented the affidavit of Kimberly McClure, who averred that Vivienne 
Redlich told her, in the presence of Pickering and her husband Danny McClure, 
that she had revoked the Trust and changed her will to make Danny McClure the 
sole beneficiary. Kimberly McClure’s affidavit also stated that Redlich told 
her that she had told Larry Bothe, and perhaps others at JPMorgan, of the 
changes.
        JPMorgan 
argues that we should not consider any of the affidavits proffered by McClure 
because they contain inadmissible hearsay. At best, Pickering’s and Kimberly 
McClure’s affidavits suggest that JPMorgan was merely aware of the purported 
revocation, but they do not show that it received written notification of 
the revocation. Thus, even considering Pickering’s and Kimberly McClure’s 
affidavits, we conclude that neither raises a fact issue that Redlich delivered 
written notice of the revocation of the Trust to JPMorgan before she died, which 
was required by the express terms of the Trust.
        McClure, 
himself, also signed an affidavit and stated,
  
Based on my own personal observations and knowledge, whenever VIVIENNE REDLICH 
had anything of importance to deliver to the bank or place in her safe deposit 
box, someone from the bank either came to pick it up or they came to pick up 
VIVIENNE REDLICH and take her to the bank to handle the matter or make a 
delivery. This was common procedure for LARRY BOTHE or someone else from J.P. 
Morgan Chase Bank to handle the exchange of documents or items this way.
 
  
McClure’s affidavit 
does not aver that this “common procedure” was used to deliver written 
notice of the November 12, 2001 document to JPMorgan before Redlich died. Thus, 
McClure’s affidavit, along with all of the other summary judgment evidence 
proffered by McClure, fails to show that Redlich delivered the November 12, 2001 
document in the manner required by the Trust.
        On 
appeal, McClure cites several cases from other jurisdictions and one from Texas, 
arguing that delivery may be either actual or constructive and that the question 
of delivery raises a fact question to be determined by a finder of fact.  See, 
e.g., Awad Tex. Enters., Inc. v. Homart Dev. Co., 589 S.W.2d 817, 
819-20 (Tex. Civ. App.—Dallas 1979, no writ) (stating that question of 
delivery of a contract is “a mixed one of law and fact to be determined by the 
trier of fact”).  However, McClure makes no attempt in either his brief 
or his reply brief to distinguish or otherwise address Runyan.
        Runyan 
controls this case, so section 3.01 of the Trust provided the particular manner 
for revoking the trust by a subsequent written document. 864 S.W.2d at 
789-90.  Analyzing this case under the standard applicable to a traditional 
motion for summary judgment, McClure’s evidence wholly fails to show delivery 
in conformity with the terms of the Trust.  Further, McClure’s summary 
judgment evidence does not controvert Bothe’s affidavit, in which he stated 
that the November 12, 2001 holographic will was never delivered to JPMorgan and 
that neither he nor anyone from JPMorgan ever saw the November 12, 2001 document 
before Redlich’s death.  See Great Am., 391 S.W.2d at 47.
        We 
conclude that no genuine issue of material fact exists as to the purported 
delivery of the alleged revocation of the Trust and that JPMorgan is entitled to 
judgment as a matter of law on that issue. See Tex. R. Civ. P. 166a(c); S.W. Elec. 
Power Co., 73 S.W.3d at 215; Clear Creek Basin, 589 S.W.2d at 678; see 
also Runyan, 864 S.W.2d at 789. Consequently, the trial court did not err in 
granting JPMorgan’s motion for partial summary judgment.  We overrule 
McClure’s two issues.
IV. Conclusion
        Having 
overruled McClure’s two issues, we affirm the trial court’s judgment.
 
  
  
                                                          ANNE 
GARDNER
                                                          JUSTICE
   
 
PANEL A:   CAYCE, 
C.J.; GARDNER and MCCOY, JJ.
 
DELIVERED: September 23, 2004