Opinion issued May 17, 2007










 






In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00392-CV






MARY WINCHEK, Appellant


V.


AMERICAN EXPRESS TRAVEL RELATED 

SERVICES COMPANY, INC., Appellee






On Appeal from County Civil Court at Law No. 3

Harris County, Texas

Trial Court Cause No. 824174






OPINION ON REHEARING




 On April 19, 2007, we issued an opinion affirming the trial court's judgment.
Appellee, American Express Travel Related Services Company, Inc. ("Amex"),
moved for rehearing. We deny the motion, but withdraw the opinion dated April 19,
2007, and issue this opinion in its stead. Our judgment of the same date remains
unchanged. 

 Amex sued appellant, Mary Winchek, for breach of contract for failing to pay
a credit card debt. Winchek appealed the summary judgment rendered in favor of
Amex. 

 In what we construed as four issues, Winchek contends that the trial court erred
by granting Amex's motion for summary judgment on its breach of contract claim (1)
because (1) Amex's summary judgment proof was insufficient to establish the
existence of a contract and the damages sustained; (2) genuine issues of material fact
preclude summary judgment; (3) Winchek's supplemental response was improperly
stricken as untimely; and (4) Winchek's motion for continuance to depose Amex's
summary judgment affiant was improperly denied.

 We affirm.


Summary of Facts and Procedural History

 Winchek was the holder of a credit card, an "American Express Green Card"
("the Card"), issued by Amex. Winchek used the Card to purchase goods and
services on account. The terms of the account were governed by an "Agreement
Between Cardmember and American Express Travel Related Services Company,
Inc." ("the Agreement"). The Agreement, which Amex contends it sent to Winchek
at the time the Card was issued, stated that by keeping, signing, or using "the
enclosed American Express Card," the cardholder agreed to the terms stated in the
Agreement. It is undisputed that Winchek kept and used the Card.

 The Agreement provided that payment for all charges was due immediately
upon receipt of each billing statement and that unpaid balances were subject to certain 
late fees. Certain purchases, however, could be made under a deferred billing feature,
a "Sign and Travel and/or Special Purchase Account" ("Sign and Travel"), (2) which
permitted the cardholder to make a certain minimum payment each period toward the
total balance. The Sign and Travel balance was subject to certain finance charges. 

 Each month, Amex sent billing statements to Winchek, and it is undisputed that
Winchek did not challenge the accuracy of the statements. Winchek made monthly
payments to her account through June, 2003, but failed to make payments in July and
August, 2003. Subsequently, Amex cancelled the Card.

 On October 4, 2004, Amex sued Winchek, alleging breach of contract and "a
cause of action for account stated." Winchek answered with 25 defenses, including
release; accord and satisfaction; compromise and settlement; waiver; estoppel;
excuse; usury; fraud; failure of conditions precedent; failure to mitigate; lack of
consideration, capacity, and notice; and that the claims were barred by the statute of
frauds and statute of limitations. 

 On June 1, 2005, Amex moved for summary judgment on its claims on the
grounds that Winchek had, by accepting and using the Card, agreed to pay Amex for
all amounts charged to her account, that Amex performed all terms and conditions as
provided in the Agreement, that Winchek breached the Agreement by failing to pay
the charges as agreed, and that damages for the unpaid charges and fees totaled
$36,675.17 plus attorney's fees and costs. As evidentiary support, Amex attached the
Agreement, a series of Winchek's account statements, and the affidavits of Ira
Axelrod, Manager of Credit Operations and custodian of records for Amex, and Jamie
Silver, in support of attorney's fees. 

 On July 5, 2005, Winchek responded that Amex had failed to prove the
existence of a valid contract and its terms, had failed to negate Winchek's affirmative
defenses, and had failed to proffer competent summary judgment evidence. Winchek
appended the affidavit of her attorney, John Mastriani. 

 On July 13, 2005, the trial court granted a final summary judgment in favor of
Amex, without stating its basis. Subsequently, Winchek moved for a new trial,
complaining that summary judgment had been granted "exclusively on the sworn
account" claim and that recovery under such theory was not available to a credit card
issuer. Winchek also argued that Amex had improperly attempted to recover under
a quantum meruit theory. In addition, Winchek alleged that Axelrod's affidavit was
insufficient because it had not been formally sworn to as true and correct. Amex
responded that summary judgment had been properly granted on its breach of contract
claim and that it had not alleged a suit on a sworn account or stated a quantum meruit
claim. On September 14, 2005, the trial court granted Winchek's motion for new trial
without stating its basis.

 On October 5, 2005, Amex again moved for summary judgment on the grounds
that Winchek had, by accepting and using the Card, agreed to pay Amex for all
amounts charged to her account, that Amex had performed all terms and conditions
as provided in the Agreement, that Winchek had breached the Agreement by failing
to pay the charges as agreed, and that damages to Amex for the unpaid charges and
fees totaled $36,675.17 at the time of suit, plus attorney's fees. Once again, Amex
attached the Agreement, a series of Winchek's account statements, the affidavit of
Axelrod, and the affidavit of Rhonda M. Ryemon in support of attorney's fees. 

 A hearing on the motion was set for December 30, 2005. On the night of
December 27, 2005, Winchek filed a response to the motion for summary judgment,
to which she appended her own affidavit as evidentiary support. On January 23,
2006, the trial court struck Winchek's response as untimely and rendered a final
summary judgment in favor of Amex. The trial court found that there was no genuine
issue of material fact and that Amex was entitled to judgment for the sum of
$36,675.17 and attorney's fees of $5,501.28. 

 On February 28, 2006, Winchek again moved for a new trial, which the trial
court denied. This appeal ensued.

Analysis

 In what we construe as four issues, Winchek contends that the trial court erred
by granting Amex's motion for summary judgment on its breach of contract claim
because (1) Amex's summary judgment proof was insufficient to establish the
existence of a contract and the damages sustained; (2) genuine issues of material fact
preclude summary judgment; (3) Winchek's supplemental response was improperly
stricken as untimely; and (4) Winchek's motion for continuance to depose Amex's
summary judgment affiant was improperly denied.A. Standard of Review

 We review a trial court's granting of a traditional summary judgment de novo. 
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). A
summary judgment under Rule of Civil Procedure 166a(c) is properly granted only
when a movant establishes that there are no genuine issues of material fact and that
it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Knott, 128
S.W.3d at 215-16. A plaintiff moving for summary judgment must prove that it is
entitled to summary judgment as a matter of law on each element of its cause of
action. Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 222-23 (Tex. 1999); Rizkallah
v. Conner, 952 S.W.2d 580, 582 (Tex. App.--Houston [1st Dist.] 1997, no writ). 

 Only if the movant conclusively establishes its cause of action does the burden
shift to the nonmovant to respond with evidence raising a genuine issue of material
fact that would preclude summary judgment. Steel, 997 S.W.2d at 222-23; see Casso
v. Brand, 776 S.W.2d 551, 556 (Tex. 1989). In deciding whether there is a disputed
material fact precluding summary judgment, evidence favorable to the nonmovant
will be taken as true, every reasonable inference must be indulged in favor of the
nonmovant, and any doubts resolved in its favor. Knott, 128 S.W.3d at 215. 

 Here, because Winchek's burden to respond with evidence raising a genuine
issue of material fact that would preclude summary judgment did not arise unless and
until Amex met its burden to conclusively establish that it is entitled to summary
judgment as a matter of law on each element of its cause of action, we first consider
those of Winchek's issues that relate to whether Amex met its burden. See Steel, 997
S.W.2d at 222-23. Only if we determine that Amex met its burden do we consider
Winchek's issues that relate to whether she met her burden to respond with evidence
raising a genuine issue of material fact that would preclude summary judgment. See
id.

 When, as here, the trial court does not state the basis for its decision in its
summary judgment order, we must uphold the order if any of the theories advanced
is meritorious. Knott, 128 S.W.3d at 216.

B. Applicable Law

 To be entitled to summary judgment on its breach of contract claim, Amex was
required to prove, as a matter of law, the essential elements of a breach of contract
claim: (1) the existence of a valid contract; (2) performance or tendered performance
by the plaintiff; (3) breach of the contract by the defendant; (4) damages sustained as
a result of the breach. Prime Products, Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631,
636 (Tex. App.--Houston [1st Dist.] 2002, pet. denied). 


C. Amex's Summary Judgment Proof

 In her first issue, Winchek contends that Amex's summary judgment proof was
insufficient to establish the existence of a contract and the damages sustained, the
first and fourth elements of its cause of action.

 1. Existence of a Valid Contract

 Winchek contends that Amex failed to prove that a contract existed because it
failed to prove that Amex delivered the Agreement to Winchek, that the Agreement
contained definite terms, and that Winchek accepted those terms.

 Parties form a binding contract when the following elements are present: (1)
an offer, (2) an acceptance in strict compliance with the terms of the offer, (3)
meeting of the minds, (4) each party's consent to the terms, and (5) execution and
delivery of the contract with the intent that it be mutual and binding. See id. To be
enforceable, a contract must be sufficiently certain to enable a court to determine the
rights and responsibilities of the parties. T.O. Stanley Boot Co. v. Bank of El Paso,
847 S.W.2d 218, 221 (Tex.1992). 

 As evidentiary support for its motion for summary judgment, Amex appended
the affidavit of Axelrod, its Manager of Credit Operations and custodian of records. 
Axelrod attested that, "[a]t all relevant times, Winchek was the holder of an American
Express Personal Card ("The Personal Card") that enabled her to charge items to an
American Express Card Account (Number 3731 . . . --the "Personal Acount") and
that "[b]y accepting and using the Personal Card, Winchek agreed to all of the terms
and conditions set forth in the Personal Card Member Agreement with American
Express." 

 The Agreement, which Amex also appended to its motion, stated that "when
you keep, sign or use the enclosed American Express Card (including any renewal or
replacement Cards issued to you) you agree to the terms of this Agreement." 
Pursuant to the Agreement, the holder of the Card was responsible for payment of
amounts charged to the account. The Agreement provided that a billing statement
would be mailed at the end of each billing period, that full payment was due
immediately upon receipt of the billing statement, and that late fees may be charged
if timely payment was not received. The amount of the late fees depended upon the
length of time that an account remained unpaid and the address to which the bill was
sent. The Agreement provided that Texas cardholders would be assessed a fee of
1.5% on amounts unpaid for two or more billing periods. In addition, late fees could
be added as long as the account remained unpaid.

 The Agreement also provided that for purchases made under the Sign and
Travel, or deferred billing, feature, a minimum payment was due at the end of each
billing cycle, as reflected in the billing statements. The minimum amount due would
be the greater of $20 or 1/50th of the new balance shown on each statement, plus any
previously unpaid minimum payments. The Agreement provided for finance charges,
as follows:

 The daily periodic rate ("DPR") for Account charges depends on [the]
adherence to the terms of this Agreement each month up to the 12-month period preceding each billing period (each such period being
referred to as a "Review Period"). . . . The DPR for Account charges is
based on an [annual percentage rate ("APR")] which may be adjusted
monthly. The APR for all billing periods ending during any month is
calculated by adding 9.9% to the "Prime Rate." . . . Notwithstanding the
foregoing, the APR will be a fixed rate of 23.46% with a DPR of
.0643% in any review period (a) any portion of any Minimum Payment
on [the] account was included within any unpaid previous balance on
billing statements on three or more occasions, (b) any portion of any
Minimum Payment on [the] Account was included within an unpaid
previous balance on two consecutive billing statements, (c) [there is a]
breach of the terms of any other American Express account, or (d) [the]
Account is considered in default for any reason and/or is cancelled. . . .
For purposes of this Agreement, the "Prime Rate" for billing periods
ending in any month is the Prime Rate listed in The Wall Street Journal
on the 15th day . . . of the prior month.


The Agreement provided that the average daily method for calculating finance
charges would be applied and explains the methodology.

 In addition, Amex appended to its motion Winchek's billing statements for
August, 2002, through August, 2003. The statements show that a specific Card and
account number were issued to Winchek and that she used the Card to charge goods
and services to her account under both the "due in full" and the "Sign and Travel"
features. The statements reflect that Winchek was charged a DPR of 0.0657% (or an
APR of 23.99%) on her "Sign and Travel" purchases. The statements reflect that
each month, from August, 2002 through May, 2003, Winchek paid the total "due in
full" amount and the minimum payment due on her Sign and Travel account. In June,
2003, Winchek paid less than the total amount due on her account; and, in July and
August, Winchek did not make payments. 

 First, Winchek contends that no contract exists because Amex failed to prove
that it ever delivered the Agreement to her, citing Awad Tex. Enters., Inc. v. Homart
Dev. Co., 589 S.W.2d 817 (Tex. Civ. App.--Dallas 1979, no writ). Generally,
delivery is essential to the validity of a contract. Prime Products, 97 S.W.3d at 636. 
However, as Homart points out, when the parties manifest an intent through their
actions and words that the contract become effective, delivery is shown. See Homart
Dev. Co., 589 S.W.2d at 820 (holding that, because parties treated lease as effective
upon execution and lessee moved in and paid rent, question of delivery of lease was
"immaterial" to contract validity). 

 Here, as in Homart, Winchek's conduct in using the card and making payments
on the account for the purchases and charges reflected on her monthly billing
statements manifested her intent that the contract become effective. As Amex
contends, a contract was created when Winchek used the Card, not upon manual
delivery of the Agreement. See id. (stating that manual delivery is not essential to
validity); see e.g., Hay v. Citibank (South Dakota) N.A., No. 14-04-01131-CV, 2006
WL 2620089, at *3 (Tex. App.--Houston [14th Dist.] Sept. 14, 2006, no pet.)
(holding that use of credit card and payments to account demonstrate existence of
contract). 

 Second, Winchek contends that no contract was formed because the terms of
the Agreement--apparently the type of account Winchek held and the applicable fees
and finance charges--were fatally indefinite. The statements clearly show that all
purchases were charged to one account number. The statements also clearly show
which purchases were categorized as "due in full" and which were deemed "Sign and
Travel" and subject to finance charges. For the months reflected in the statements
appended to Amex's motion, Winchek consistently paid the total amount of the "due
in full" account and paid the minimum payment required by the deferred payment
account. We conclude that Amex's evidence shows that the Agreement was
sufficiently definite to enable a court to determine the rights and responsibilities of
each party and that Winchek's conduct in using the card and making payments on the
account for the purchases and charges reflected on her monthly billing statements
shows that she understood her obligations to Amex and that a contract was formed.
See T.O. Stanley Boot Co., 847 S.W.2d at 221; see also Hay, 2006 WL 2620089, at
*3 & n.5. 

 Finally, Winchek contends that Amex failed to show proof of her acceptance
of the terms of the Agreement. As the Agreement states, however, use of the Card
constituted acceptance of the terms governing the use of the Card, as stated in the
Agreement. Winchek does not dispute that she used the Card. In addition, Winchek
made payments each month without ever disputing the accuracy of the statements or
the stated terms.

 We conclude that Amex met its burden to show the first element of its claim,
that a contract existed between Amex and Winchek. See Prime Products, 97 S.W.3d
at 636. 

 2. Damages

 In addition, under her first issue, Winchek contends that Amex's summary
judgment proof is insufficient to establish the damages sustained, the fourth element
of its cause of action. Specifically, Winchek contends that Amex failed to establish 
the amount "that is owed and due," that all just and lawful offsets had been allowed,
and the applicable rate of interest.

 As fully discussed above, the Agreement and Winchek's statements provided
detailed explanations of the cost of credit to Winchek and the methodology employed
by Amex. As to the specific charges to Winchek, Winchek's billing statements for
August, 2002 through August, 2003 show that Winchek used the Card to charge
goods and services to her account under both the "due in full" and the "Sign and
Travel" features. Contrary to Winchek's contention, the statements in the record
before us do not reflect that interest was charged on the "due in full" transactions. 
The statements reflect that Winchek was charged a DPR of 0.0657% (or an APR of
23.99%) on her "Sign and Travel" purchases, and each statement contains a detailed
explanation of the computation of the interest rate as applied to her account.

 The statements reflect that each month, from August, 2002 through May, 2003,
Winchek paid the total "due in full" amount and the minimum payment amount
reflected on her Sign and Travel account. In June, 2003, Winchek paid less than the
total amount due on her account; and, in July and August, no payments are reflected.
The total outstanding balance owed, as reflected on the August 12, 2003 statement,
was $33,995.96. 

 The record shows that Amex's affiant, Axelrod, attested that Amex duly sent
monthly statements of account to Winchek, that each statement set forth in detail all 

the debits and credits to Winchek's account, and that each statement "reflected the
total amounts due and owing by Winchek to [Amex]." Axelrod testified that
Winchek breached "the Personal Card Agreement requiring payment in full of the
balances due on the Personal Account" and that Winchek "has not made said
payments to [Amex] with respect to the Personal Monthly Statements." Axelrod
attested that the "total outstanding, overdue and unpaid balance owed by Winchek to
[Amex] on the Personal Account [was] $36,675.17 as of May 31, 2005." Finally,
Axelrod attested that this sum was after all payments and offsets had been made to
Winchek's account by Amex.

 Amex also appended the affidavit of Rhonda M. Ryemon, who attested that "a
reasonable sum for attorney's fees in this case is 15% of the unpaid balance, which
is the sum of $5,501.28, which is allowed under the Agreement." The Agreement
states that if an unpaid account is referred to an attorney the cardholder agrees to pay
"all court costs plus attorney's fees of 15% of the then unpaid balance." 

 We conclude that Amex met its burden to show the fourth element of its claim,
the damages sustained by Winchek's breach. See Prime Products, 97 S.W.3d at 636. 

 3. Competence of Axelrod Affidavit

 In a sub-issue, Winchek contends that Amex's summary judgment proof, the
business records affidavit of Axelrod, was not competent to support summary
judgment. Specifically, Winchek contends that the affidavit is conclusory and that 
Axelrod failed to show that the affidavit was made on personal knowledge, failed to
set forth facts that would be admissible in evidence, and failed to show affirmatively
that he was competent to testify to the matters stated. 

 Rule of Civil Procedure 166a(f) requires that "affidavits shall be made on
personal knowledge, shall set forth such facts as would be admissible in evidence,
and shall show affirmatively that the affiant is competent to testify to the matters
stated therein." Tex. R. Civ. P. 166a(f). 

 Here, the record shows that Axelrod attested in his affidavit that the facts he
sets out are based on his personal knowledge and that he derives his knowledge from
26 years of employment with Amex in the legal and collections units, his position as
Manager of Credit Operations for Amex, and his personal familiarity with the policies
and procedures Amex uses in creating and keeping records--which Axelrod discusses
in great detail in his affidavit. Axelrod attested that he is personally responsible for
the archived documents regarding accounts in active litigation, "especially high
balance account holders such as . . . Winchek." 

 Axelrod has satisfied the requirement that "affidavits shall be made on personal
knowledge" because he has made an affirmative showing of how he became
personally familiar with the facts. Waite v. BancTexas-Houston, N.A., 792 S.W.2d
538, 540 (Tex. App.--Houston [1st Dist.] 1990, no writ). Axelrod's job
responsibilities qualify him to have personal knowledge of the facts stated in the
affidavit. See id.

 Winchek also contends that Axelrod's affidavit is conclusory and fails to state
any objective facts. Conclusory statements in affidavits are not competent evidence
to support a summary judgment. Rizkallah, 952 S.W.2d at 587. A conclusory
statement is one that does not provide the underlying facts to support the conclusion. 
Id. at 587. Winchek has not pointed to any specific language in Axelrod's affidavit
to support her contention. The record shows that Axelrod attested that he is the
custodian of records for Amex, that he bears the responsibility for archived
documents regarding accounts in active litigation, and that he is required to have
knowledge of the facts regarding high-balance account holders involved in litigation,
such as Winchek. As stated in detail above, Axelrod attested to the facts regarding
Winchek's account. We conclude that Axelrod's affidavit was not conclusory. See
Choctaw Properties, L.L.C. v. Aledo I.S.D., 127 S.W.3d 235, 242-43 (Tex.
App.--Waco 2003, no pet.). We further conclude that Axelrod's affidavit constituted
competent summary judgment proof.

 In sum, we have concluded that Amex met its burden to prove the first element
of its claim, that a valid contract exists. The second and third elements, that of breach
by Winchek and performance by Amex, are established because it is undisputed that 

Winchek failed to pay the amounts due as stated in the billing statements and that
Amex fully performed its obligations with regard to servicing Winchek's account
under the Agreement. Finally, we have concluded that Amex proved the fourth
element of its claim, the damages sustained. We hold that Amex met its burden to
prove that it is entitled to summary judgment as a matter of law on each element of
its cause of action. See Prime Products, 97 S.W.3d at 636. 

 Accordingly, we overrule Winchek's first issue.

D. Issue of Material Fact

 Because Amex met its summary judgment burden, the burden shifted to
Winchek to respond with evidence of a genuine issue of material fact that would
preclude summary judgment. See Steel, 997 S.W.2d at 222-23. 

 1. Untimely Response

 In her second issue, Winchek contends that the trial court erroneously struck
her supplemental response as untimely.

 Except on leave of court, the nonmovant for summary judgment must file any
response or opposing affidavits "not later than seven days prior to the day of the
[summary judgment] hearing." Tex. R. Civ. P. 166a(c). Here, the record shows that
Amex filed its motion for summary judgment on October 5, 2005, and a hearing was
set for December 30, 2005. Winchek's response was due by December 23, 2005. See
id. Winchek did not file her response until 9:56 p.m. on December 27, 2005. Amex
moved to strike the response as untimely, additionally contending that it had not
received the response until the day of the hearing and that it had been unfairly
surprised. 

 Winchek contended in the trial court that her response was timely filed on
December 27, 2005 because it was her first opportunity to file. Winchek contended
that "December 23, 2005 was a holiday [and] December 24 and 25 was a weekend." 
Winchek did not, however, contend in her response to Amex's motion to strike that
December 26, 2005 was unavailable for filing, as she contends on appeal. Issues not
presented to the trial court cannot be considered on appeal. City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979); Gulf Coast v. Clarke, 902
S.W.2d 156, 158 (Tex. App.--Houston [1st Dist.] 1995, writ denied). 

 We conclude that Winchek failed to show that her motion, filed on December
27, 2005, less than three days prior to the hearing, was timely. See Tex. R. Civ. P. 
166a(c). 

 Accordingly, Winchek's second issue is overruled.

 2. Issue of Material Fact

 In her third issue, Winchek contends that she raised genuine issues of material
fact that preclude summary judgment. Specifically, Winchek contends that she filed
an affidavit in which she "controvert[ed] the testimony of Axelrod and establishe[d]
genuine issues of material fact." In her affidavit, Winchek attested that she did not
receive the Agreement, that "she was charged an incorrect late fee," and that she was
charged insurance premiums that she never agreed to pay. 

 Winchek's affidavit, however, was solely appended to and filed with her
supplemental response, which the trial court struck as untimely. Having concluded
that the trial court did not abuse its discretion in striking Winchek's supplemental
response as untimely, we do not consider her affidavit in this appeal. See Tex. R.
Civ. P. 166a(c); City of Houston, 589 S.W.2d at 678.

 Accordingly, Winchek's third issue is overruled.

 3. Motion for Continuance

 In her fourth issue, Winchek contends that the trial court improperly denied her
motion for a continuance to allow her to depose Amex's summary judgment affiant,
Axelrod. 

 Winchek's motion for continuance was contained in her supplemental
response, which we have already concluded was properly struck as untimely. 
However, even if we were to consider her issue, we note that Winchek's presentation
of her contention is comprised of two sentences that do not contain any citations to
the record or to authority. We will not decide an issue on appeal without proper
argument and authority showing why the actions of the trial court were erroneous. 
See Tex. R. App. P. 38.1(h). 

 Accordingly, Winchek's fourth issue is overruled.

CONCLUSION


 We affirm the judgment of the trial court. 


 





 Laura Carter Higley 

 Justice


Panel consists of Justices Nuchia, Keyes, and Higley.


1. 
 ' 

2.