# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00572-CV

**Edwin E. Merendino, Donna Merendino, Richard White, Clara White, Wallace McCarty, Mary McCarty, and Eagles Peak Ranch Water Supply Corporation, Appellants**

**v.**

**Rhonda N. Dooley, Appellee**

### FROM THE COUNTY COURT AT LAW OF COMAL COUNTY
### NO. 2003CV0084, HONORABLE BRENDA CHAPMAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants, residents of Eagles Peak Ranch subdivision and the Eagles Peak Ranch Water Supply Corporation, challenge the trial court's grant of a summary judgment in favor of appellee, Rhonda N. Dooley, allowing her to construct a house within a sanitary control easement. We reverse the judgment and remand to the trial court for further proceedings.

### *Factual Background*

All of the residents of the Eagles Peak Ranch subdivision obtain water from two wells. The Eagles Peak Water Supply Corporation is a non-profit corporation organized for the

purposes of supplying water to the residents of the subdivision. It is responsible for the operation, maintenance, and control of the water wells. Each well is surrounded by a 150-foot sanitary control easement which restricts the use of the surrounding land in order to protect the water supply. The easements restrict the usage of the land within 150 feet of the well providing that:

1.  Sanitation control is imposed . . . specifically prohibiting the construction and or operation of stock pens, feed lots, dump grounds, privys, tile or concrete sanitation sewers, cesspools, septic tanks, septic tank drain fields, drilling of improperly constructed water wells of any depth and all other construction or operation that could create an unsanitary condition within, upon or across the above described area of land;

2.  This sanitation control permits the construction of homes, buildings or other structures upon the property, provided, however, that any and all of such construction shall in no way violate the prohibitions contained above . . .

Appellee owns lot 152 in the Eagles Peak Ranch subdivision. One of the sanitary control easements covers the entire front of lot 152. Appellee proposed building a home on the front portion of the lot, the majority of which would be within the sanitary control easement. The back of the house and the septic system would lay outside of the easement toward the middle of the lot. Appellee requested approval from the board of directors of the Eagles Peak Water Supply Corporation for the planned construction. She initially received a letter from director Dudley Rivette notifying her that the board had approved the construction of the home on the easement. A subsequent letter notified her that Rivette's approval of the home was unauthorized and that the board would not approve the construction. The board informed appellee that no construction on the easement would be permitted and that she was required to submit a plan in which the home would

2

be outside of the easement and the septic system placed "as far away from the sanitary control easement as the lot line of lot 152 will allow."

Appellants filed suit the following month seeking a declaratory judgment determining their rights under the sanitary control easement and an injunction preventing appellee from building on the easement. Appellee filed an answer asserting that her planned construction on the easement had been approved by the Texas Commission on Environmental Quality (TCEQ). She provided a letter in which the TCEQ discussed its review of appellee's plans and the easement:

> According to that easement document, the construction of homes, buildings or other structures are permitted so long as those structures do not violate any prohibitions that are outlined. Of the prohibitions listed, those that would be associated with the construction of a residence would be on-site sewage facilities and their disposal drainfields. The engineered drawing included with the easement document indicate[s] that the proposed aerobic treatment tank and spray irrigation area are outside of the bounds of the easement. If constructed as engineered, our rules would not prohibit the construction of the residence or the aerobic system.

Appellee also filed a counterclaim seeking declaratory relief construing the easement to permit the planned construction of her home and a motion for summary judgment.

Appellants submitted controverting summary judgment evidence, including the affidavit of a hydrogeologist, George Veni, Ph.D., attesting that the construction of a home on the sanitary control easement would likely harm the water quality and might impede the servicing of the well. The trial court granted summary judgment, declaring that the easement allowed for the construction of appellee's home as sited and awarding attorney's fees. Appellants filed a motion for new trial and an amended motion for new trial citing further evidence of the well's high susceptibility to contamination. These motions were overruled by operation of law.

3

### *Discussion*

Summary judgment is appropriate when it clearly appears that only a question of law is involved in the decision and there is no genuine fact issue. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999). The summary judgment movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Id.* In deciding whether there is a genuine issue of material fact precluding summary judgment, evidence favorable to the nonmovant will be taken as true, we indulge every inference and resolve any doubts in the nonmovant's favor. *Id.*; *Hall v. Lone Star Gas Co.*, 954 S.W.2d 174, 177 (Tex. App.—Austin 1997, pet. denied).

Both parties agree that the resolution of the summary judgment issue lies in the proper interpretation of the sanitary control easement. We apply basic principles of contract construction and interpretation when considering the express terms of an easement. *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). An easement should be interpreted to give effect to the intentions of the parties as ascertained from the language used in the instrument, or the circumstances surrounding the creation of the servitude, and to carry out the purpose for which it was created. *Id.* at 701 (citing *Restatement (Third) of Property (Servitudes)* § 4.1). Unless a different intention is manifested, when language in the easement has a generally prevailing meaning, we interpret it in accordance with that meaning. *See id.* (citing *Restatement (Second) Contracts* § 202(3)(a)). Nothing passes by implication except what is reasonably necessary to fairly enjoy the rights expressly granted in the easement. *Id.* When an easement is susceptible to only one reasonable, definite interpretation after applying established rules of contract construction, we are obligated to construe it as a matter

4

of law even if the parties offer different interpretations of the easement's terms. *Id*.; *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999).

Appellee defends the trial court's grant of summary judgment arguing that the intent of the easement was only to comply with state regulations and guidelines concerning public water supplies. She compares the language of the easement with the definition of a sanitary control easement found in the Texas Administrative Code, as well as the sample sanitary control easement form prescribed by the TCEQ. The Texas Administrative Code defines a sanitary control easement as:

> a legally binding document securing all land within 150 feet of a public water supply well location, from pollution hazards. This document must fully describe the location of the well and surrounding lands and must be filed in the county records to be binding.

30 Tex. Admin. Code § 290.38 (48) (2003). This corresponds with the provisions of the sanitary control easement at issue in this case. The language of the sanitary control easement at issue also contains the same basic elements as a form easement provided by the TCEQ. Based on these observations, appellee argues that the sanitary control easement on her land was intended to be in accordance with state regulations and that, therefore, the TCEQ's November 22, 2002, letter stating its view that her construction plan would not violate the terms of the easement should control the interpretation of the parties' rights.

Although the TCEQ's November 2002 opinion letter may be relevant to a factual determination of the merits of whether the construction would harm the quality of the drinking water, it provides no authority in construing the actual language of the easement or in determining the

intentions of those who created it over 15 years earlier. Nor does the language of the easement indicate that the opinion of a state agency will control the rights of the parties. Rather, we must first look to the plain, ordinary, and generally accepted meaning of the terms of the easement. *See Marcus Cable Assocs.*, 90 S.W.3d at 701 (express terms of easement generally delineate rights of the parties).

Reading the sanitary control easement as a whole, it is apparent that the parties did not intend to categorically prohibit any construction on the easement. The instrument permits the construction of "homes, buildings or other structures on the *property*" so long as such construction does not violate any of the other prohibitions contained in the instrument. (Emphasis added.) In its first paragraph, the easement designates "that *portion of the property* . . . described in the attached Exhibit "A" hereto, to be a sanitary control easement." (Emphasis added.) Viewing these provisions together, the instrument reflects that its use of the term "property" refers to the entire subdivision, including the easement. The limitations imposed on appellee's rights, however, are also clearly stated and include "all other construction that could create an unsanitary condition within, upon or across the above described area of land." Therefore, we read the language of the easement to permit the construction of a house on the easement so long as it does not violate any of the easement's specific prohibitions or potentially "create an unsanitary condition within, upon or across" the easement. Such limitations are consistent with plain, ordinary and generally accepted meaning of the language of the easement and the general intention of the parties who created the easement; to allow for development of the subdivision without harming the quality of the drinking water.

Interpreting the meaning of the sanitary control easement as we do, summary judgment would only be appropriate if there was no genuine issue of material fact as to whether the construction of appellee's home would comply with the restrictions of the easement. *See Rhone-Poulenc, Inc.*, 997 S.W.2d at 222. Specifically, we inquire whether the construction of the house "could create an unsanitary condition within, upon or across" the easement. Appellant presented evidence in opposition to the motion for summary judgment in the form of the affidavit of hydrogeologist George Veni, Ph.D. Veni discussed the possible impact of the construction on the well:

> Well #2A is surrounded by a 150-ft radius sanitary control easement. The proposed location of the Dooley home is within that easement. The proposed location for the septic tank and field are outside of the easement. The portion of the proposed septic system within the easement would primarily be the effluent pipes below and adjacent to the house. The home's front yard would be entirely within the easement where the use of any lawn chemicals or fertilizers could potentially reach the well.

> * * *

> [T]here is no[] definite information whether or not the proposed Dooley home and septic system would adversely impact Well #2-A. The lack of adequate casing [in the well], the proposed system's proximity to the well, and the sensitivity of karst to pollution, including the Eagles Peak area, make it likely that well water quality could be degraded.

Veni's opinion that the construction would "make it likely that well water quality could be degraded" was not conclusory but was based on his knowledge of the geological characteristics of the area, his understanding of the planned construction, and his examination of the site. *See Burrow v. Arce*, 997 S.W.2d 229, 236 (Tex. 1999) (expert affidavit must have reasoned basis which the expert, because of his knowledge, skill, experience, training, or education, is qualified to state). Taking this evidence

7

as true, indulging every inference and resolving any doubt in the favor of the nonmovant, we find that appellant raised a genuine issue of material fact as to whether the construction of appellee's house on the easement "could create an unsanitary condition."

Because we find that there exists a genuine issue of material fact, we reverse the trial court's grant of a summary judgment and remand for further proceedings.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Reversed and Remanded

Filed:   April 22, 2004

8