COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-001-CV

CARROLL KOONS APPELLANT

V.

IMPACT SALES & MARKETING APPELLEE

GROUP, INC. D/B/A IMPACT

GROUP, INC.

------------

FROM COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In four issues, Appellant Carroll Koons appeals the trial court’s granting of Appellee Impact Sales & Marketing Group, Inc. d/b/a Impact Group Inc.’s motion for summary judgment.  We affirm.

BACKGROUND

Appellant offered to sell a truss press system and a pull saw to Appellee, an industrial equipment broker.  Regarding the proposed sale, Appellant stated by affidavit as follows: After some negotiation, Appellant agreed to sell Appellee the equipment for $16,000.  Appellee prepared a bill of sale setting out the agreement’s terms, which Harry Berney, Appellee’s president, presented to Appellant when Berney visited Appellant’s shop in Arkansas.  Berney viewed the equipment and marked the truss press system to indicate where it should be disassembled.  Berney provided Appellant with a $6,000 check, which Berney indicated was partial payment under the contract.  Appellant asked for $8,000, but Berney stated that he had only received $6,000 from his third party buyer.  Appellee later explained that the third party buyer it had lined up for both pieces of equipment no longer wanted the truss system, so Appellee would not purchase it.

Appellee, on the other hand, claims the following:  Berney merely spoke with Appellant on several occasions about the equipment but made no agreement to purchase anything because Appellant had failed to provide the written equipment condition reports that Appellee had requested.  Appellee refused to consider either purchasing or brokering a sale of the equipment without having the written condition reports.  Additionally, after Berney inspected the truss press system, he informed Appellant that the press was worth no more than “salvage value” and that Appellee had no market for the press in its then-present condition at any cost.  Appellant inquired if Appellee was still interested in the pull saw for the purchase price of $6,000, and Appellee agreed to purchase it for that amount.  Before he left Arkansas with the pull saw, Berney wrote Appellant a $6,000 check, and on the check’s designated “FOR” line, he wrote, “Metra Cut Saw.”

Appellant sued Appellee for breach of contract, and Appellee moved for summary judgment, based on the affirmative defense of statute of frauds.  The trial court granted Appellee’s motion for summary judgment on December 4, 2006.

SUMMARY JUDGMENT

Standard Of Review

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.  
Rhone-Poulenc, Inc. v. Steel
, 997 S.W.2d 217, 223 (Tex. 1999); 
see
 
Tex. R. Civ. P.
 166a(b), (c)
.  To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.  
Ryland Group, Inc. v. Hood,
 924 S.W.2d 120, 121 (Tex. 1996).  Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact.  
Centeq Realty, Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).
  When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.  
IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004).

Statute Of Frauds

In his first issue, Appellant argues that Appellee did not conclusively prove as a matter of law that the contract violated the statute of frauds.  Because the sale of equipment was for $16,000, we apply the general rule that a contract for the sale of goods for $500 or more is unenforceable absent a writing sufficient to indicate that a contract for sale has been made and signed by the party against whom enforcement is sought.  
See 
Tex. Bus. & Com. Code Ann. 
§ 2.201(a) (Vernon 1994). 
 The required writing need not contain all the material terms of the contract, and such material terms as are stated need not be precisely stated.  
Id
. § 2.201 cmt. 1.  All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction.  
Id
.  The only term that must appear is the quantity term.  Quantity need not be accurately stated, but recovery is limited to the amount stated.  
Id
.

Appellant argues that the bill of sale, prepared by Appellee, satisfies the statute of frauds because it is signed by Appellee and it establishes the quantity term by listing two specific pieces of equipment.  Appellee argues that it, as the party whom enforcement is sought, did not sign the bill of sale.  Appellee also contends that the bill of sale was merely a proposed bill, i.e., an offer to agree rather than a contract for the sale of goods.

The term “signed” is defined under the Code as any symbol executed or adopted with present intention to adopt or accept a writing.  
Tex. Bus. & Com. Code Ann
. § 1.201(b) (37) (Vernon Supp. 2007).  The symbol may be printed, stamped, or written; it may be by initials or by thumbprint.  
Id
.
 
§ 1.201 cmt. 37.  It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead.  
Id
.
  
No catalog of possible situations can be complete, and the court must use common sense and commercial experience in passing upon these matters.  
Id
.
 
 The question always is whether the symbol was executed or adopted by the party with present intention to adopt or accept the writing.  
Id
.

The bill of sale in this case was drafted by Appellee on its company letterhead, which details the company name, the nature of the company, and its telephone and fax numbers.  The bill of sale also contains a signature block at the bottom of the document with designated lines for the “buyer” and “seller” to sign and date the document.  Neither party signed in the designated signature block; however, Appellant claims that the signature requirement is nonetheless satisfied because Appellee prepared the bill of sale as the buyer under its own letterhead.  Appellant further argues that even though Appellee created the signature lines, this designation may have been done to ensure that Appellant would likewise confirm the oral agreement in writing.

In 
Cox Engineering, Inc. v. Funston Machine & Supply Co.
, we held that an invoice on Cox’s letterhead was “signed” by Cox because it provided an “authentication that identifies the party to be charged.”
 
 749 S.W.2d 508, 511 (Tex. App.—Fort Worth 1988, no writ) 
(citing 
Tex. Bus. & Com. Code Ann. 
§ 2.201 cmt. 1 (Vernon 1968)). 
 Cox
 is distinguishable from this case, however, because the invoice at issue in 
Cox
 did not contain signature lines unsigned by both parties.  Here, Appellee included a signature line for itself, as buyer, on its proposed bill of sale but never signed the signature line.  Because Appellee did not sign the proposed bill of sale, the fact that the bill was drafted on its letterhead did not evidence that Appellee sent the bill with the present intention to adopt or accept it.  
See 
Tex. Bus. & Com. Code Ann
. § 1.201 cmt. 37.  Indeed, it would be inconsistent to hold that Appellee intended at the time it created the document that the letterhead, alone, suffice as its signature when at the same time Appellee created a designated location on the document for itself, as buyer, to sign.  For these reasons, we hold that Appellee has conclusively proven that the bill of sale was unsigned and unenforceable under the statute of frauds.  
See id
 § 2.201(a).  We overrule Appellant’s first issue.
(footnote: 2)
Exceptions to Statute of Frauds

Because Appellee has conclusively proven its affirmative defense, we now consider whether Appellant raised a fact issue on any of the exceptions to the statute of frauds.  
See Centeq Realty, Inc., 
899 S.W.2d at 197.
  In issues two, three, and four, Appellant contends that he raised a fact issue as to the merchant exception, receipt and acceptance exception, and the partial performance exception, taking the transaction out of the statute of frauds.  
See
 
Tex. Bus. & Com. Code Ann. 
§ 2.201(b), (c)(3) (Vernon 1994).

1. Merchant Exception

Appellant argues that he raised a material fact issue regarding the merchant exception because both he and Appellee are merchants as defined under the Code and the bill of sale was a writing that confirmed the existence of a prior oral contract.  The merchant exception states the following:

Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of Subsection (a) against such party unless written notice of objection to its contents is given within ten days after it is received.

Id
. § 2.201(b).

We assume without deciding that both parties are merchants and determine whether the proposed bill of sale was a confirmation of a prior oral contract.  Section 2.201(b) does not require specific words in order to confirm the oral contract.
  
Dura-Wood Treating Co. v. Century Forest Indus., Inc.
, 675 F.2d 745, 749 (5th Cir. 1982) (holding that a letter sent in response to an oral agreement constituted as confirmation under section 2.201(b) of the Code), 
cert. denied
, 459 U.S. 865 (1982).
 
 However, a writing conditioned on further acceptance, is not a confirmation.  
See Great Western Sugar Co. v. Lone Star Donut Co.
, 721 F.2d 510, 510-11 (5th Cir. 1983) (“[A]s the master of its offer, Great Western, the sender, had the power to require written acceptance as a prerequisite to the formation of a contract.  Since it did, and since none was given, no contract arose.”).

Although the general scenario governed by section 2.201(b) involves the seller-offeror sending a written confirmation of an oral contract to the buyer-offeree—which is not the case here—the same general principle as stated in 
Great Western
 applies to this case.  
By drafting the bill of sale with a blank signature block, we hold that Appellee did not intend for this document to suffice as a confirmation.  Rather, the blank signature block demonstrates that Appellee required some other response or further acceptance to commence the transaction.
  See id.
  Therefore, we hold that Appellant has failed to raise a genuine issue of material fact regarding whether the bill of sale was a confirmation of a prior oral contract.  We overrule 
Appellant’s second issue.

3. Receipt and Acceptance of Goods

In his third issue, Appellant argues that because Appellee had received and accepted the goods, the transaction had been taken out of the purview of the statute of frauds.  
See 
Tex. Bus. & Com. Code Ann. 
§ 2.201(c)(3).  This exception to the statute of frauds states that “[a] contract which does not satisfy the requirements of Subsection (a) but which is valid in other respects is enforceable with respect to goods for which payment has been made and accepted
 or which have been received and accepted
.”  
Id
.  (emphasis added). 

Even though Appellee took only the pull saw with him, Appellant argues that all the goods were received by Appellee because Appellee commenced the transaction at Appellant’s place of business.  
See id
.
 
§ 2.308 (Vernon 1994) (stating that unless otherwise agreed upon, the place for delivery is the seller’s place of business).  In his affidavit, Appellant averred as follows: Berney inspected the truss press system and pull saw at Appellant’s shop and failed to reject them.  Berney turned on the truss press system for some period of time and assisted Appellant’s employees in disassembling the truss press system, marking the areas where he
 wanted it dismantled.  During this process, Berney made no statement that he rejected the truss press system or that he found it unacceptable.  In fact, Berney communicated that he would return in a few weeks to retrieve the truss press system and gave Appellant $6,000 as a partial payment for the whole transaction.  Accordingly, Appellant argues that Appellee accepted the goods.  
See id
. § 2.606 (outlining what actions constitute acceptance under the Code).  Appellee claims, however, that Berney rejected the truss press system because of its poor condition and that the $6,000 check was payment solely for the pull saw.

After reviewing the entire record, we are unpersuaded by Appellant’s argument.  Regardless of whether Appellee accepted the goods by failing to reject them, we hold that Appellant has failed to raise a genuine issue of material fact concerning whether Appellant received the goods.  “Receipt” of goods means taking physical possession of them. 
 Tex. Bus. & Com. Code Ann. 
§ 2.103(a)(3) (Vernon Supp. 2007).  
Appellant has presented no evidence that Appellee received anything regarding the truss press system.
(footnote: 3)  Appellee signed no document regarding payment or receipt of the truss press system, and likewise, Appellee did not physically retain the truss press system. 
 
See Stone
, 629 S.W.2d at 257.
  We decline to accept Appellant’s premise that Appellee received the goods by traveling to Appellant’s place of business in Arkansas.  Because Appellant has not raised a genuine issue of material fact regarding whether Appellee received the truss press system, the transaction remains subject to the statute of frauds.  We overrule Appellant’s third issue.

3.  Partial Performance

In his fourth issue, Appellant argues that Appellee’s partial performance of the contract validated the agreement and eliminated the writing requirement.  
See 
Tex. Bus. & Com. Code Ann. 
§ 2.201(c)(3).  This argument is very similar to Appellant’s third issue except that instead of arguing that Appellee received and accepted all the goods, Appellant asserts that by partially performing—paying $6,000—Appellant validated the entire agreement.

This argument fails under the plain language of the Code.  Section 2.201(c)(3) provides in pertinent part that the contract is “enforceable
 with respect to 
goods for which payment has been made and accepted.”  
Id
.
 
(emphasis added).  Therefore, because Appellee paid $6,000, the contract is enforceable only with respect to goods in that amount.  Despite Appellants averment in his affidavit that the $6,000 check was partial payment for both the pull saw and truss press system, thus taking the entire contract out of the statute of frauds, the $6,000 check specifically 
stated that it was for the “Metra Cut Saw.”  The evidence presented shows that the $6,000 check was the only payment made and accepted by Appellant and that the only good taken by Appellee was the pull saw; thus, even
 indulging every reasonable inference in Appellant’s favor, we hold that the payment made by Appellee was solely for the pull saw. 
 Appellant’s statement in his affidavit fails to raise a genuine issue of material fact that Appellee’s payment was partial performance for the entire contract.  Thus, the transaction as applied to the truss press system remains subject to the statute of frauds.  Accordingly, we overrule Appellant’s fourth issue.

CONCLUSION

Having overruled all of Appellant’s issues, we affirm the trial court’s judgment.

DIXON W. HOLMAN

JUSTICE

PANEL A:  CAYCE, C.J.; HOLMAN and MCCOY, JJ.

DELIVERED:  December 6, 2007

FOOTNOTES
1:
See 
Tex. R. App. P
. 47.4.

2:
Because we conclude that Appellee did not sign the proposed bill of sale,  we need not address Appellee’s contention that the bill of sale was only an offer for a future agreement.

3:
Stone v. Metro Rest. Supply, Inc.
, on which Appellant relies, is inapposite because the goods in that case were delivered to the buyer’s building site, and the buyer retained them.  
629 S.W.2d 254, 257 (Tex. App.—Fort Worth 1982, writ ref’d n.r.e.).  Likewise,
 
Posey v. Broughton Farm Co.
, which Appellant also cites, is inapplicable because the seller in that case transferred title to cotton by delivering negotiable documents covering the cotton to the buyer’s agent, and here, Appellant has presented no evidence regarding negotiable documents covering the truss press system.  
See
 997 S.W.2d 829, 831 (Tex. App.—Eastland 1999, pet. denied).