COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-001-CV

 

 

CARROLL KOONS                                                                APPELLANT

 

                                                   V.

 

IMPACT SALES & MARKETING                                                 APPELLEE

GROUP,
INC. D/B/A IMPACT

GROUP,
INC.

 

                                              ------------

 

         FROM
COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

In four issues, Appellant
Carroll Koons appeals the trial court=s granting of Appellee Impact Sales & Marketing Group, Inc. d/b/a
Impact Group Inc.=s motion for
summary judgment.  We affirm.

 








BACKGROUND

Appellant offered to sell a
truss press system and a pull saw to Appellee, an industrial equipment
broker.  Regarding the proposed sale,
Appellant stated by affidavit as follows: After some negotiation, Appellant agreed
to sell Appellee the equipment for $16,000. 
Appellee prepared a bill of sale setting out the agreement=s terms, which Harry Berney, Appellee=s president, presented to Appellant when Berney visited Appellant=s shop in Arkansas.  Berney
viewed the equipment and marked the truss press system to indicate where it
should be disassembled.  Berney provided
Appellant with a $6,000 check, which Berney indicated was partial payment under
the contract.  Appellant asked for
$8,000, but Berney stated that he had only received $6,000 from his third party
buyer.  Appellee later explained that the
third party buyer it had lined up for both pieces of equipment no longer wanted
the truss system, so Appellee would not purchase it.








Appellee, on the other hand,
claims the following:  Berney merely
spoke with Appellant on several occasions about the equipment but made no
agreement to purchase anything because Appellant had failed to provide the
written equipment condition reports that Appellee had requested.  Appellee refused to consider either
purchasing or brokering a sale of the equipment without having the written
condition reports.  Additionally, after
Berney inspected the truss press system, he informed Appellant that the press
was worth no more than Asalvage
value@ and that Appellee had no market for the press in its then‑present
condition at any cost.  Appellant
inquired if Appellee was still interested in the pull saw for the purchase
price of $6,000, and Appellee agreed to purchase it for that amount.  Before he left Arkansas with the pull saw,
Berney wrote Appellant a $6,000 check, and on the check=s designated AFOR@ line, he wrote, AMetra Cut Saw.@

Appellant sued Appellee for
breach of contract, and Appellee moved for summary judgment, based on the
affirmative defense of statute of frauds. 
The trial court granted Appellee=s motion for summary judgment on December 4, 2006.

SUMMARY JUDGMENT

Standard Of Review








A defendant is entitled to
summary judgment on an affirmative defense if the defendant conclusively proves
all the elements of the affirmative defense. 
Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); see
Tex. R. Civ. P. 166a(b),
(c).  To accomplish this, the
defendant-movant must present summary judgment evidence that establishes each
element of the affirmative defense as a matter of law.  Ryland Group, Inc. v. Hood, 924 S.W.2d
120, 121 (Tex. 1996).  Once the defendant
produces sufficient evidence to establish the right to summary judgment, the
burden shifts to the plaintiff to come forward with competent controverting
evidence raising a genuine issue of material fact.  Centeq Realty, Inc. v. Siegler, 899
S.W.2d 195, 197 (Tex. 1995).  When
reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant, and we indulge every reasonable inference and resolve any doubts in
the nonmovant=s
favor.  IHS Cedars Treatment Ctr. of
DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).

Statute Of Frauds

In his first issue, Appellant
argues that Appellee did not conclusively prove as a matter of law that the
contract violated the statute of frauds. 
Because the sale of equipment was for $16,000, we apply the general rule
that a contract for the sale of goods for $500 or more is unenforceable absent
a writing sufficient to indicate that a contract for sale has been made and
signed by the party against whom enforcement is sought.  See Tex.
Bus. & Com. Code Ann. ' 2.201(a) (Vernon 1994). 
The required writing need not contain all the material terms of the
contract, and such material terms as are stated need not be precisely
stated.  Id. ' 2.201 cmt. 1.  All that is
required is that the writing afford a basis for believing that the offered oral
evidence rests on a real transaction.  Id.  The only term that must appear is the
quantity term.  Quantity need not be
accurately stated, but recovery is limited to the amount stated.  Id.








Appellant argues that the
bill of sale, prepared by Appellee, satisfies the statute of frauds because it
is signed by Appellee and it establishes the quantity term by listing two
specific pieces of equipment.  Appellee
argues that it, as the party whom enforcement is sought, did not sign the bill
of sale.  Appellee also contends that the
bill of sale was merely a proposed bill, i.e., an offer to agree rather than a
contract for the sale of goods.

The term Asigned@ is defined
under the Code as any symbol executed or adopted with present intention to
adopt or accept a writing.  Tex. Bus. & Com. Code Ann. ' 1.201(b) (37) (Vernon Supp. 2007).  The symbol may be printed, stamped, or
written; it may be by initials or by thumbprint.  Id. ' 1.201 cmt. 37.  It may be
on any part of the document and in appropriate cases may be found in a billhead
or letterhead.  Id.  No catalog of possible situations can be
complete, and the court must use common sense and commercial experience in
passing upon these matters.  Id.
 The question always is whether the
symbol was executed or adopted by the party with present intention to adopt or
accept the writing.  Id.








The bill of sale in this case
was drafted by Appellee on its company letterhead, which details the company
name, the nature of the company, and its telephone and fax numbers.  The bill of sale also contains a signature
block at the bottom of the document with designated lines for the Abuyer@ and Aseller@ to sign and
date the document.  Neither party signed
in the designated signature block; however, Appellant claims that the signature
requirement is nonetheless satisfied because Appellee prepared the bill of sale
as the buyer under its own letterhead. 
Appellant further argues that even though Appellee created the signature
lines, this designation may have been done to ensure that Appellant would
likewise confirm the oral agreement in writing.








In Cox Engineering, Inc.
v. Funston Machine & Supply Co., we held that an invoice on Cox=s letterhead was Asigned@ by Cox
because it provided an Aauthentication
that identifies the party to be charged.@  749 S.W.2d 508, 511 (Tex. App.CFort Worth 1988, no writ) (citing Tex.
Bus. & Com. Code Ann. ' 2.201 cmt. 1 (Vernon 1968)).  Cox is distinguishable from this case,
however, because the invoice at issue in Cox did not contain signature
lines unsigned by both parties.  Here,
Appellee included a signature line for itself, as buyer, on its proposed bill
of sale but never signed the signature line. 
Because Appellee did not sign the proposed bill of sale, the fact that
the bill was drafted on its letterhead did not evidence that Appellee sent the
bill with the present intention to adopt or accept it.  See Tex.
Bus. & Com. Code Ann. ' 1.201 cmt. 37.  Indeed, it
would be inconsistent to hold that Appellee intended at the time it created the
document that the letterhead, alone, suffice as its signature when at the same
time Appellee created a designated location on the document for itself, as
buyer, to sign.  For these reasons, we
hold that Appellee has conclusively proven that the bill of sale was unsigned
and unenforceable under the statute of frauds. 
See id ' 2.201(a).  We overrule Appellant=s first issue.[2]

Exceptions to Statute of
Frauds

Because Appellee has
conclusively proven its affirmative defense, we now consider whether Appellant
raised a fact issue on any of the exceptions to the statute of frauds.  See Centeq Realty, Inc., 899 S.W.2d at
197.  In issues two, three, and four,
Appellant contends that he raised a fact issue as to the merchant exception,
receipt and acceptance exception, and the partial performance exception, taking
the transaction out of the statute of frauds. 
See Tex. Bus. & Com. Code Ann. ' 2.201(b), (c)(3) (Vernon 1994).

1. Merchant Exception

Appellant argues that he
raised a material fact issue regarding the merchant exception because both he
and Appellee are merchants as defined under the Code and the bill of sale was a
writing that confirmed the existence of a prior oral contract.  The merchant exception states the following:








Between
merchants if within a reasonable time a writing in confirmation of the contract
and sufficient against the sender is received and the party receiving it has
reason to know its contents, it satisfies the requirements of Subsection (a)
against such party unless written notice of objection to its contents is given
within ten days after it is received.

 

Id. ' 2.201(b).

We assume without deciding
that both parties are merchants and determine whether the proposed bill of sale
was a confirmation of a prior oral contract. 
Section 2.201(b) does not require specific words in order to confirm the
oral contract.  Dura-Wood Treating Co.
v. Century Forest Indus., Inc., 675 F.2d 745, 749 (5th Cir. 1982) (holding
that a letter sent in response to an oral agreement constituted as confirmation
under section 2.201(b) of the Code), cert. denied, 459 U.S. 865 (1982).
 However, a writing conditioned on
further acceptance, is not a confirmation. 
See Great Western Sugar Co. v. Lone Star Donut Co., 721 F.2d 510,
510-11 (5th Cir. 1983) (A[A]s the
master of its offer, Great Western, the sender, had the power to require
written acceptance as a prerequisite to the formation of a contract.  Since it did, and since none was given, no
contract arose.@).








Although the general scenario
governed by section 2.201(b) involves the seller-offeror sending a written
confirmation of an oral contract to the buyer-offereeCwhich is not the case hereCthe same general principle as stated in Great Western applies
to this case.  By drafting the bill of
sale with a blank signature block, we hold that Appellee did not intend for
this document to suffice as a confirmation. 
Rather, the blank signature block demonstrates that Appellee required
some other response or further acceptance to commence the transaction.  See id. 
Therefore, we hold that Appellant has failed to raise a genuine issue of
material fact regarding whether the bill of sale was a confirmation of a prior
oral contract.  We overrule Appellant=s second issue.

3. Receipt and Acceptance of Goods

In his third issue, Appellant
argues that because Appellee had received and accepted the goods, the
transaction had been taken out of the purview of the statute of frauds.  See Tex.
Bus. & Com. Code Ann. ' 2.201(c)(3).  This
exception to the statute of frauds states that A[a] contract which does not satisfy the requirements of Subsection (a)
but which is valid in other respects is enforceable with respect to goods for
which payment has been made and accepted or which have been received and
accepted.@  Id. 
(emphasis added). 








Even though Appellee took
only the pull saw with him, Appellant argues that all the goods were received
by Appellee because Appellee commenced the transaction at Appellant=s place of business.  See id.
' 2.308 (Vernon 1994) (stating that unless otherwise agreed upon,
the place for delivery is the seller=s place of business).  In his
affidavit, Appellant averred as follows: Berney inspected the truss press
system and pull saw at Appellant=s shop and failed to reject them. 
Berney turned on the truss press system for some period of time and
assisted Appellant=s employees
in disassembling the truss press system, marking the areas where he wanted it
dismantled.  During this process, Berney
made no statement that he rejected the truss press system or that he found it
unacceptable.  In fact, Berney
communicated that he would return in a few weeks to retrieve the truss press
system and gave Appellant $6,000 as a partial payment for the whole
transaction.  Accordingly, Appellant
argues that Appellee accepted the goods. 
See id. ' 2.606
(outlining what actions constitute acceptance under the Code).  Appellee claims, however, that Berney rejected
the truss press system because of its poor condition and that the $6,000 check
was payment solely for the pull saw.








After reviewing the entire
record, we are unpersuaded by Appellant=s argument.  Regardless of
whether Appellee accepted the goods by failing to reject them, we hold that
Appellant has failed to raise a genuine issue of material fact concerning
whether Appellant received the goods.  AReceipt@ of goods
means taking physical possession of them.  Tex. Bus. & Com. Code Ann. ' 2.103(a)(3) (Vernon Supp. 2007). 
Appellant has presented no evidence that Appellee received anything
regarding the truss press system.[3]  Appellee signed no document regarding payment
or receipt of the truss press system, and likewise, Appellee did not physically
retain the truss press system.  See
Stone, 629 S.W.2d at 257.  We decline
to accept Appellant=s premise
that Appellee received the goods by traveling to Appellant=s place of business in Arkansas. 
Because Appellant has not raised a genuine issue of material fact
regarding whether Appellee received the truss press system, the transaction
remains subject to the statute of frauds. 
We overrule Appellant=s third issue.

3. 
Partial Performance

In his fourth issue,
Appellant argues that Appellee=s partial performance of the contract validated the agreement and
eliminated the writing requirement.  See
Tex. Bus. & Com. Code Ann. ' 2.201(c)(3).  This
argument is very similar to Appellant=s third issue except that instead of arguing that Appellee received
and accepted all the goods, Appellant asserts that by partially performingCpaying $6,000CAppellant
validated the entire agreement.








This argument fails under the
plain language of the Code.  Section
2.201(c)(3) provides in pertinent part that the contract is Aenforceable with respect to goods for which payment has been
made and accepted.@  Id. (emphasis added).  Therefore, because Appellee paid $6,000, the
contract is enforceable only with respect to goods in that amount.  Despite Appellants averment in his affidavit
that the $6,000 check was partial payment for both the pull saw and truss press
system, thus taking the entire contract out of the statute of frauds, the
$6,000 check specifically stated that it was for the AMetra Cut Saw.@  The evidence presented shows that the $6,000
check was the only payment made and accepted by Appellant and that the only
good taken by Appellee was the pull saw; thus, even indulging every reasonable
inference in Appellant=s favor, we
hold that the payment made by Appellee was solely for the pull saw.  Appellant=s statement in his affidavit fails to raise a genuine issue of
material fact that Appellee=s payment was partial performance for the entire contract.  Thus, the transaction as applied to the truss
press system remains subject to the statute of frauds.  Accordingly, we overrule Appellant=s fourth issue.

 

 

 








CONCLUSION

Having overruled all of
Appellant=s issues, we
affirm the trial court=s judgment.

 

 

 

DIXON W. HOLMAN

JUSTICE

 

PANEL A: 
CAYCE, C.J.; HOLMAN and MCCOY, JJ.

DELIVERED: 
December 6, 2007











[1]See Tex. R. App. P. 47.4.





[2]Because we conclude that Appellee
did not sign the proposed bill of sale, 
we need not address Appellee=s contention that the bill of sale was only an offer for a
future agreement.





[3]Stone
v. Metro Rest. Supply, Inc., on which Appellant relies, is inapposite because the goods in that
case were delivered to the buyer=s building site, and the buyer retained them.  629 S.W.2d 254, 257 (Tex.
App.CFort
Worth 1982, writ ref=d
n.r.e.).  Likewise, Posey v. Broughton
Farm Co., which Appellant also cites, is inapplicable because the seller in
that case transferred title to cotton by delivering negotiable documents
covering the cotton to the buyer=s agent, and here, Appellant
has presented no evidence regarding negotiable documents covering the truss
press system.  See 997 S.W.2d 829,
831 (Tex. App.CEastland
1999, pet. denied).